Melvin MILLER, et al., Appellants,

v.

**MISSOURI DEPARTMENT OF TRANSPORTATION, et al.,**
Respondents.

No. WD 59939.

Missouri Court of Appeals,
Western District.

June 25, 2002.

Michelle M. Masoner, Kansas City, for appellant.

James M. Slone, Lee's Summit, for respondent.

Before HOLLIGER, P.J., ULRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This is the second appeal of an action brought by Melvin and Judy Miller against the Missouri Department of Transportation (MODOT), the Missouri Highway and Transportation Commission (MHTC), and Charles and Mardelle Mears. In the original suit, the Millers claimed that MODOT and MHTC breached a contract to sell them real property and sold the property to the Mears for less than the best available cash offer, in violation of § 227.290 RSMo. The trial court granted the defendants summary judgment, and the Millers appealed. In the first appeal, we partially reversed and remanded, holding that none of the real estate sale contracts at issue were valid or binding. On remand, the trial court voided the transfer of the property to the Mears and returned the property to the state agencies. The Millers appeal, claiming that the trial court did not comply with our remand instructions because it refused to compel conveyance of the property to them as the highest bidders. We affirm.

## Factual and Procedural Background

We draw principally from the facts recited in *Miller v. Missouri Department of Transportation,* 32 S.W.3d 170 (Mo.App. W.D.2000) ("*Miller I*"), as the issues are directly related.

In the summer of 1998, MHTC owned a parcel of real property located at 2nd and Garfield Street in St. Joseph, Missouri. MODOT used the property as a maintenance yard for old 71 Highway. Kevin Keith served as MODOT's District Engineer in District One, where the Garfield Street property is located. In August 1998, Keith decided that MODOT should sell the property. Arrangements were made for Coldwell Banker to serve as realtor for the property sale.

On September 4, 1998, Charles and Mardelle Mears made the first offer to purchase the Garfield Street property. They submitted a $1,000 earnest money deposit and a proposed contract offer to purchase the property for $40,000. The offer was accepted and signed by Keith on September 9, 1998. The contract stated that the sale was subject to approval by MHTC.

Also on September 9, 1998, Melvin and Judy Miller submitted a $1,000 earnest money deposit and contract offer to purchase the Garfield Street property for $40,000. Keith agreed to accept the offer, subject to MHTC approval, as a "back-up" in the event the property sale to the Mears was not completed on or before November 23, 1998.

On September 22, 1998, the Millers presented a new contract offer to purchase the Garfield Street property for $50,000. Keith accepted the offer, subject to MHTC approval. The contract offer, signed by Keith and the Millers, contained the same "back-up" provision as the prior agreement.

The sale to the Mears was not completed by November 23, 1998, because MODOT was unable to obtain the deed to the Garfield Street property. By agreement dated November 24, 1998, the Mears and MODOT extended their closing date to December 4, 1998.

On November 30, 1998, the Millers informed Coldwell Banker and Keith that they intended to purchase and immediately

close on the property for $50,000 pursuant to the back-up contract. No immediate response was received, and MODOT continued with preparations to sell the property to the Mears.

On December 2, 1998, Keith was notified that MODOT's Chief Counsel's Office would not approve the Mears' contract because it was not in the standard form required for the sale of any MHTC property by an outside realtor. That same day, MODOT sent the Mears a new contract on the MHTC standard form for the originally agreed sales price of $40,000. The Mears executed the contract and returned it to MODOT. Assistant District Engineer Donald Hillis executed the contract on behalf of MODOT, signing Keith's name without Keith's approval.

On December 8, 1998, the Millers notified Coldwell Banker that they still wanted to purchase the property pursuant to the back-up contract. Coldwell Banker responded by letter that MHTC would not honor the back-up contract because it was not prepared on the MHTC standard contract form.

MODOT and MHTC transferred the Garfield Street property to the Mears on January 26, 1999, presumably pursuant to the MHTC standard form contract signed on December 2, 1998.

Prior to that closing, on January 11, 1999, the Millers filed suit against MODOT, MHTC, and the Mears. Count I of their petition sought specific performance of the second back-up contract between MODOT and the Millers. In Count II, the Millers sought a declaratory judgment voiding the property sale to the Mears and compelling conveyance of the property to the Millers. Count III of the petition asserted a damages claim against MODOT and MHTC for breach of the back-up contract.

On November 22, 1999, the trial court entered summary judgment against the Millers on all three counts of their petition. The Millers appealed. In the first appeal, we determined that none of the four sales contracts were valid because MODOT officials failed to follow proper contracting procedures and exceeded their legal authority. We affirmed the trial court's summary judgment as to Counts I and III because the Millers were not entitled to specific performance or damages for breach of invalid contracts. We reversed and remanded as to Count II, finding:

> Because MODOT and MHTC violated § 227.290 in transferring the Garfield Street property to the Mears, and because the Mears were on notice that the transfer was being made over the objection of the highest bidder, the transfer of that property must be deemed void. Accordingly, the trial court's entry of summary judgment must be reversed as to Count II of the Miller's petition and the cause remanded to the circuit court for further proceedings consistent with this opinion.

*Id.* at 177.

On remand, the trial court granted the Millers summary judgment on Count II, by voiding the property sale between the Mears and MODOT. The trial court ordered that title in the Garfield Street property be returned to MODOT and denied the Millers' request that the property be conveyed to them. The Millers appeal.

## Standard of Review

The sole issue on appeal is whether the trial court complied with our remand mandate in denying conveyance of the Garfield Street property to the Millers. Appellants contend our prior opinion found that the Millers were the highest bidder for the property, and the trial court on remand was bound to this holding as the "law of

the case." In addition to voiding the property sale to the Mears, the Millers argue the trial court was obligated to convey the property to them as the highest bidders pursuant to § 227.290.

■■■ The law of the case doctrine governs successive appeals and applies appellate decisions to later proceedings in that case. *Williams v. Kimes,* 25 S.W.3d 150, 153 (Mo. banc 2000). Pursuant to this doctrine, prior decisions of the appellate court become the law of the case in any subsequent proceedings, and the trial court has no authority to modify, alter, or otherwise depart from those prior decisions. *Student Loan Mktg. Ass'n v. Raja,* 914 S.W.2d 825, 829 (Mo.App. W.D.1996). As further explained in *Hankins v. Hankins,* 864 S.W.2d 351, 353 (Mo.App. W.D. 1993):

> When a point decided at the appellate level comes before a lower court in further proceedings in the same case, the lower court does not have jurisdiction to overrule the appellate court. If the lower court disregards the law of the case, the issue is not simply whether the court is correct in its construction of the appellate decision, but rather whether the court is within its lawful jurisdiction.

■■■ To determine whether the trial court acted in accordance with the law of the case, we look not only to the mandate, but also to the results contemplated in the appellate opinion. *Raja,* 914 S.W.2d at 829. "The mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the mandate ..." *Id.* (quoting *Frost v. Liberty Mut. Ins. Co.,* 813 S.W.2d 302, 305 (Mo. banc 1991)). Where a "general

mandate" enters judgment consistent with the opinion, the trial court has "discretion on the mechanics," as directed by the mandate. *Id.*

## Trial Court's Compliance With The Mandate

■■■ With regard to Appellants' claim that the law of the case required the trial court to convey the property to the Millers as the highest bidder, two holdings in *Miller I* are instructive.

First, Miller I held that the Millers were not entitled to specific performance or damages for breach of contract on Counts I and III because their back-up contracts to purchase the property were invalid. *Miller,* 32 S.W.3d at 175. The district engineer, Kevin Keith, "failed to follow proper procedure and lacked any authority to enter into" the back-up contracts; thus, the agreements were "not valid or binding on MODOT or MHTC." *Id.* This holding established the law of the case that the Millers did not have an enforceable contract to purchase the Garfield Street property.

Upon remand of Count II, the trial court's refusal to convey the property to the Millers was consistent with the holding in Miller I. The Millers were not entitled to purchase the property because they did not have a valid back-up contract with MODOT. The trial court acted within its lawful jurisdiction to deny the requested relief.

Second, we held in *Miller I* that the property transfer to the Mears was void because it violated the requirement in § 227.290[1] that MHTC property be con-

---

1. Section 227.290 provides in relevant part:

    Whenever in the opinion of the state highways and transportation commission the advantageous use of any interest in land or any leasehold which has heretofore or may hereafter be acquired by the commission has ceased, the state highways and transportation commission shall have authority to convey the same for the best available cash price by deed signed by its

veyed for the "best available cash price." *Id.* at 176–177. MODOT and MHTC had argued in the first appeal that the Mears' offer to purchase the property for $40,000 was the highest bid at the time the offer *was accepted* on September 9, 1998. *Id.* at 176. We disagreed, ruling that the proper date for determining the best available cash price is the date of the property transfer, not the date of the contract offer. *Id.* The Millers had a pending offer to purchase the Garfield Street property for $50,000 at the time the property was transferred to the Mears on January 26, 1999, for $40,000. *Id.* at 177. Thus, the transfer on that date was void because the Millers were willing to pay a higher price than the Mears. *Id.* Based on this holding, we reversed and remanded the Count II claim for declaratory relief against the Mears.

On remand, the trial court followed the law of the case by voiding the Mears contract and transferring the property back to MODOT and MHTC. This action was proper under § 227.290, in that the statute only prevented the state agencies from conveying the property to a party who did not offer the best available cash price. The statute did not affirmatively require MODOT and MHTC to follow through with a sale once a property is offered for purchase. While the state agencies may be liable for breach of a valid contract in such a circumstance, Count II solely addressed the legality of the property transfer under § 227.290. Thus, on remand, the court was obligated only to address the alleged statutory violation and grant relief accordingly.

By returning the property to the state agencies, the trial court put the parties in the positions they were in prior to the unlawful transfer. It had no duty nor authority to convey the property to the chairman or vice chairman and attested by

Millers, because § 227.290 merely allows MODOT and MHTC to sell the property if they choose, so long as the agencies sell for the highest available price. The propriety of any future conveyance must be determined based on the validity of the contract offers and the best available cash price at the time of the conveyance. Thus, the trial court followed the law of the case and did not err in refusing to compel conveyance of the property to the Millers.

We affirm the trial court's judgment.

All concur.