**CENTRAL MISSOURI ELECTRIC COOPERATIVE, Respondent,**

v.

**Richard W. BALKE and Ruth Balke, Appellants.**

**No. WD 61106.**

Missouri Court of Appeals, Western District.

Nov. 18, 2003.

William J. Foland, Jr., Esq., Kansas City, MO, Attorney for Appellant.

Spencer J. Brown, Esq., Kansas City, MO, Attorney for Respondent.

Before ELLIS, C.J., HAROLD L. LOWENSTEIN and BRECKENRIDGE, JJ.

## OVERVIEW

HAROLD L. LOWENSTEIN, Judge.

The rather simple explanation and overview of this appeal is the appellants (the Balkes) assert error in the trial court's: (1) failure to apply the law of the case doctrine to their counterclaim for damages in tort for wrongful termination of electric service by the respondent (CMEC); and (2) granting partial summary in favor of respondent on appellants' additional counterclaims for the torts of intentional infliction of emotional distress and abuse of process. Although the respondent, the electric supplier to the appellants' dairy farm and home, filed the underlying suit to collect for unpaid electric service, this appeal stems from the appellants' counterclaims. The reader is advised that litigation between these parties includes two separate lawsuits (one filed by each party), an appeal and subsequent reversal of both suits, and a settlement of the first suit. Some of the events, suits, and appeals overlap in time—a condensed chronology is provided in the appendix to this opinion.

## STATEMENT OF FACTS

This third appeal involving these parties attempts to resolve a long-standing dispute originating from events commencing more than twenty years ago. Although the initial suit between the Balkes and CMEC has already been settled and is not before this court, it is necessary to revisit the facts that give rise to the entire dispute. The facts, as set forth in detail in *Central Missouri. Electric Cooperative v. Wayne,* 18 S.W.3d 46, 48–50 (Mo.App.2000),[1] ("Balke II") are as follows: CMEC is an electric cooperative, serving customers located in rural, central Missouri. Richard and Ruth Balke operate a dairy farm in Cole Camp, where they live with three of their four children and Richard's mother. CMEC had supplied electrical power to the Balke farm since 1971.

In 1982, CMEC replaced an existing transformer on the property with a larger transformer because of the expansion of the Balke dairy operation. After the installation, the Balkes began experiencing over-voltage problems, which eventually damaged electrical equipment on their farm. As a result, the Balkes' dairy herd developed an increased frequency of mastitis, an inflammation of a cow's udder.

After several years of recurring complaints, in March 1991, CMEC discovered that the transformer was transmitting over-voltages. Subsequently, the transformer was removed and found to be defective. In January 1992, the Balkes received an unusually low electric bill. When they inquired about the bill, they were told that they would not be required to pay any electrical bill until CMEC investigated the low bill. Following that conversation, the Balkes did not pay any electric bills nor did they read their meter.

However, CMEC billed the Balkes for service for February 1992 through June 1992. In response, Mr. Balke sent a letter expressing his dissatisfaction and explaining the financial difficulties the family was experiencing because of the electrical problems. Mr. Balke also sent a statement of his own for the damages caused since 1982 which had never been paid by CMEC.

Sometime in early June 1992, Mr. and Mrs. Balke met with CMEC's general manager, who indicated that the co-op should have resolved the situation a long time ago. However, the general manager requested that the Balkes talk to CMEC's lawyer, Adam Fischer, to make matters "more legal." Mr. and Mrs. Balke met with Fischer, who allegedly informed the Balkes that they would not need to pay their bills until they were compensated for the damages caused by the over-voltage problem. According to Mr. Balke, Fischer assured him that they had a deal. For the next five years, the Balkes did not read their meter, did not receive an electric bill from CMEC, and did not receive a delinquency notice, while CMEC continued to provide electrical service to the Balkes.

The Balkes filed suit against CMEC in July 1992, because their claims for damages to their dairy business had never been paid. A judgment entered after a jury trial awarded damages to the Balkes in the amount of $783,333.00. CMEC then appealed to this court. See *Balke v. Cent. Mo. Elec. Coop.,* 966 S.W.2d 15 (Mo.App. 1997) ("Balke I"). In *Balke I,* this court reversed the judgment and remanded the case.[2] However, a settlement was eventu-

---

1. The previous appeal of this case was reported as *Central Missouri Electric Cooperative v. Wayne,* not *Balke.* "Wayne" apparently is Mr. Balke's middle name, which was inadver- tently used as the style of the case in the Southwest Reporter.

2. This court reversed the trial court's judgment and held that: (1) a supplier or distribu-

ally reached in November 1998, prior to the trial on remand but after the filing of the current lawsuit. The settlement agreement disposed of all claims related to the harm to the Balkes' dairy herd caused by the defective transformer provided by CMEC, effectively ending litigation over the initial suit.

\*　　\*　　\*　　\*　　\*　　\*

However during the pendency of CMEC's appeal of the initial lawsuit and prior to executing the settlement, the following events occurred, leading to the current lawsuit. CMEC asked the Balkes to sign a "Partial Assignment of Proceeds" that would give CMEC preference over the Balkes' other creditors who would be paid out of the November 1996 judgment. Although CMEC threatened to discontinue electric service, the Balkes refused to sign the assignment.

On June 2, 1997, CMEC workers appeared on the Balkes' farm and disconnected the electricity supply without notifying the Balkes the electric service to the farm was being shut off. Although Mr. Balke had requested a reconnection, the CMEC declined to restore service, and the Balkes lived without electricity for over 480 days.

On July 24, 1997, CMEC filed the underlying suit against the Balkes, alleging that they had refused to pay for electrical service from July 1, 1992, through June 1, 1997. The Balkes filed an answer containing several affirmative defenses, as well as a counterclaim for wrongful termination of electrical power. Their counterclaim set forth that an agreement had been made with CMEC's lawyer Adam Fischer acknowledging that the Balkes would not have to pay for their electricity until the

previous damages had been paid to them. The trial court granted summary judgment in favor of CMEC on its petition for damages for service it had provided to the Balkes. After commencement of the trial on the Balkes' counterclaim, the court directed a verdict for CMEC. In *Balke II*, this court reversed the trial court's decision to grant CMEC's motions for summary judgment and directed verdict. *Cent. Mo. Elec. Coop.*, 18 S.W.3d at 53. Specifically, with respect to the directed verdict granted after submission of the Balkes' evidence, this court stated that "there was substantial evidence admitted to show that CMEC intentionally terminated the Balkes' electrical service in violation of their payment agreement previously made with Adam Fischer." *Id.* at 52. Thus, this court found that the trial court erred in granting the directed verdict in favor of CMEC and reversed and remanded for a new trial.

On remand, the Balkes amended their counterclaim to include two additional claims: intentional infliction of emotional distress (rising from CMEC disconnecting service to the Balkes' farm) and abuse of process (rising from CMEC filing the current lawsuit for unpaid account). Prior to trial, the Balkes filed a brief with the court asserting that the law of the case doctrine applied to their claim for wrongful termination. They argued that this court found, in *Balke II* as a matter of law, that the Balkes had established the third and fourth elements of the tort of wrongful termination of electricity. Thus, they claimed that they had met their burden of proof on these two elements. CMEC subsequently filed its own motion in limine seeking to exclude any mention of this court's decision in *Balke II*. The trial

tor of electricity cannot be held liable in tort for failing to deliver electricity in a reasonably safe manner; and (2) *res ipsa loquitur* cannot be used by a plaintiff who has specifically pled, proved, and argued facts indicating negligence. *Balke*, 966 S.W.2d at 25, 26.

court, in a letter to counsel, denied the claims in the Balkes' brief and required them to "adduce evidence on all elements of the tort of wrongful termination of electricity and meet their burden of proof on each element...." The trial court sustained CMEC's motion in limine.

Prior to trial, CMEC also filed a motion seeking partial summary judgment on the Balkes' counterclaim for intentional infliction of emotional distress and abuse of process. The trial court granted this motion.

In September 2001, this case proceeded to jury trial on CMEC's claim on the unpaid account and the Balkes' sole remaining counterclaim for wrongful termination of electrical service. The jury returned a verdict in favor of CMEC on its claim for unpaid account and in favor of CMEC on the Balkes' counterclaim. The Balkes' filed a motion for new trial, asserting that the trial court erred in denying the relief they sought concerning the applicability of the law of the case doctrine and in granting CMEC's motion in limine. The trial court did not rule on the motion, and, thus, it was deemed denied under Rule 78.06. This appeal follows.[3]

## I. WRONGFUL TERMINATION OF ELECTRIC SERVICE

■ In their first point on appeal, the Balkes claim that the trial court erred in denying their motion for new trial because the law of the case doctrine precludes the re-examination of issues decided by this court in the same action. They claim that this court held, in *Balke II,* that the Balkes had met their burden of proof concerning the third and fourth elements of their counterclaim for wrongful termination of electric service,[4] and, thus, they should not have been required to submit evidence concerning these elements.

■ The law of the case doctrine is inapplicable to the facts of this case in the manner asserted by the Balkes. "The doctrine of law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." *Williams v. Kimes,* 25 S.W.3d 150, 153 (Mo. banc 2000). A holding of an appellate court becomes the law of the case, "precluding re-litigation of issues on remand and subsequent appeal." *Id.* at 154. Under this doctrine, a trial court may not modify, alter, or depart from the prior decisions of the appellate court. *Miller v. Mo. Dep't of Transp.,* 97 S.W.3d 478, 481 (Mo.App.2002). In deciding whether the trial court complied with this doctrine, this court looks "not only to the mandate, but also to the results contemplated in the appellate opinion." *Id.*

In the preceding trial of this suit, the trial court entered a directed verdict in

---

3. This appeal does not address any findings related to the initial suit filed by the Balkes for damages to their dairy operation; nor do the Balkes challenge the trial court judgment on CMEC's claim for unpaid account in the current lawsuit. The only issues before this court are whether the trial court erred in failing to properly apply the law of the case doctrine to the Balkes' counterclaim for wrongful termination and whether the trial court erred in granting summary judgment in favor of CMEC on the Balkes' counterclaim for intentional infliction of emotional distress and abuse of process.

4. The elements of wrongful termination of electrical service are: (1) the defendant is engaged in the discharge of a public enterprise or service; (2) the plaintiffs fall within the class of persons whom defendant was obligated to serve; (3) plaintiffs have performed all conditions precedent entitling them to electrical service; (4) defendant wrongfully refused or neglected to supply such service; and (5) plaintiffs have been damaged. *Cent. Mo. Elec. Co-op.,* 18 S.W.3d at 50.

favor of CMEC at the close of Balkes' case on their counterclaim. *Cent. Mo. Elec. Coop.*, 18 S.W.3d at 50. The trial court there had determined that the Balkes had not satisfied the third and fourth elements of wrongful termination of electric service. *Id.* The third element of the tort requires the plaintiffs to perform all conditions precedent entitling them to electrical service; the fourth element requires the defendant to wrongfully refuse or neglect to supply such service to the plaintiffs. *Id.* Concerning the third element, the trial court determined that "because appellants did not prove a legally enforceable contract existed between Adam Fischer and the Balkes, which would thereby excuse them from having to pay their electric bill, that they failed to perform the condition precedent of paying their electric bill." *Id.* This court held that because the Balkes had pled a tort cause of action, and not breach of contract, there was no requirement of a legally enforceable contract. *Id.* With respect to the fourth element, the trial court held that "there was not substantial evidence admitted to show CMEC intentionally disconnected the Balkes' electricity." *Id.* at 51. This court disagreed, noting ample evidence that would have supported submission of the question to the jury. *Id.* at 52.

▮ There are two reasons that this court should not apply the law of the case doctrine in the manner asserted by the Balkes. First, *Balke II* addressed whether the trial court erred in granting a directed verdict in favor of CMEC on the Balkes' counterclaim for wrongful termination. As this court noted in *Balke II*, review of a directed verdict "entail[ed] an examination as to whether the Balkes' evidence made a submissible claim of wrongful termination of electric service when viewing the evidence and reasonable inferences therefrom in the light most favor-

able to the Balkes." *Id.* at 50. A review of a directed verdict is a determination as to whether a party has made a submissible claim, not a determination as to the merits of the claim. *See e.g., Massman Constr. Co. v. Mo. Highways & Transp. Comm'n*, 31 S.W.3d 109, 112–13 (Mo.App.2000) (rejecting plaintiffs claim that appellate court's finding that summary judgment was inappropriate was necessarily a decision, as a matter of law, on an element of the asserted claim). Further, this court noted that "[d]irecting a verdict is a drastic measure and a presumption is made in favor of reversing the trial court's grant of a directed verdict unless the facts and any inferences from those facts are so strongly against the Balkes as to leave no room for reasonable minds to differ as to a result." *Cent. Mo. Elec. Coop.*, 18 S.W.3d at 50. On the other hand, the ultimate determination as to the merits of a claim are made by the jury, a determination made without the favorable inference given to the party resisting a motion for directed verdict. Instead, the jury, as the finder of fact, after hearing all the evidence, may properly accept or reject the credibility of any evidence presented by either party.

Second, it would have been improper for this court, on appeal of the grant of a directed verdict, to make a factual determination and conclusively hold that the Balkes prevailed on any element or claim. This is especially true when CMEC did not have an opportunity to present its own case to contradict the evidence the Balkes had submitted. To rule otherwise would effectively eliminate CMEC's right to be heard at trial. Consequently, the appropriate action for the trial court to follow was to permit CMEC to present its own evidence and to submit the case to the jury. On remand, the trial court followed the mandate of this court by allowing the Balkes' claim to be presented to the jury. Point denied.

## II. Failure to Appeal All Grounds on which Summary Judgment was Granted

The Balkes claim that the trial court erred in granting CMEC partial summary judgment on the Balkes' counterclaim for intentional infliction of emotional distress and for abuse of process. They contend that a genuine issue of material fact existed since there was sufficient evidence presented to indicate that the parties did not intend for the release executed in a separate suit to preclude the Balkes from asserting their counterclaims for intentional infliction of emotional distress and for abuse of process.

■ Where a trial court has granted summary judgment without specifying the basis upon which the motion was granted, this court will affirm the grant of summary judgment under any appropriate theory. *McDowell v. Waldron,* 920 S.W.2d 555, 562 (Mo.App.1996). Further, a trial court's order is presumed to have based its decision on the grounds specified in respondents' motion if the trial court's order does not set forth its reasoning. *Id.*

■ CMEC presented two grounds in seeking summary judgment on the Balkes' counterclaims for intentional infliction of emotional distress and abuse of process. First, CMEC claimed that the Balkes failed to offer proof of every element of each claim. Second, it claimed that both claims were barred by the release executed by the Balkes as provided for in the settlement agreement.

The trial court did not specify the ground upon which CMEC's motion was granted. It may be presumed that the trial court granted summary judgment on the two grounds contained in the motion, both because the Balkes did not offer proof of each element of both claims and because the release barred the Balkes

from asserting additional claims against CMEC. However, on appeal, the Balkes only allege that summary judgment was improper on the second ground, i.e. the release did not preclude them from asserting counterclaims for intentional infliction of emotional distress and abuse of process. Assuming that the Balkes are correct regarding the release, they must also establish that summary judgment was inappropriate on the other ground offered by CMEC, which they have not done. Since the Balkes do not deny that the trial court erred in granting summary judgment on this ground, the trial court's grant of summary judgment must be affirmed.

Even assuming that the Balkes had challenged both grounds for granting summary judgment, they must be able to establish that it was inappropriate to grant summary judgment on each ground. The Balkes would not have been able to meet this burden.

## III. Intentional Infliction of Emotional Distress

■ This court reviews a trial court's grant of summary judgment *de novo,* reviewing the record in the light most favorable to the party against whom judgment was entered and giving the non-moving party the benefit of all reasonable inferences from the record. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 381. "[A] 'defending party' [here CMEC] may establish a right to judgment by (1) showing facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the

**636**

trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* Once the party seeking summary judgment has met this burden, the non-moving party must set forth specific facts showing that there is a genuine issue of material fact. *Id.*

■ To recover for intentional infliction of emotional distress, the Balkes must show (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm. *Thomas v. Special Olympics Mo., Inc.,* 31 S.W.3d 442, 446 (Mo.App.2000). Additionally, the plaintiff must establish that the sole intent in acting was to cause emotional distress. *Id.*

■ Here, CMEC contends that it is entitled to summary judgment because it has offered facts that negate an essential element of the Balkes' claim for intentional infliction emotional distress that the cooperative's sole motivation for terminating electric service was to cause the Balkes emotional distress. In support of its motion, CMEC offered an affidavit executed by its manager, Harold Ream. In the affidavit, Ream states that his decision to terminate service was "motivated by the fact that the Balkes were not making payment for past or current electrical service and were not providing security ... that full payment would be made." Ream also stated that he had no motivation to cause emotional distress to the Balkes but was acting to protect the interests of the cooperative. Furthermore, Ream stated that "it was unfair to the other members of CMEC to continue furnishing electrical service to the Balkes without payment or sufficient security of payment." CMEC

claims that this affidavit was sufficient to make a prima facie showing that it was entitled to summary judgment, and that the Balkes were required "to show, by affidavit, depositions, answers to interrogatories, or admissions on file, that the facts were genuinely disputed."

CMEC relies on this court's opinion in *Thomas v. Special Olympics Missouri, Inc.,* to support its contention that an affidavit expressing affiant's motivation is sufficient to make a prima facie showing that summary judgment was proper when the defendant's motivation is the underlying issue. In that case, the plaintiff sued the Special Olympics for intentional infliction of emotional distress based on its decision not to reinstate him and allow him to participate in Special Olympic events. *Id.* at 443. *In* support of its motion for summary judgment, the Special Olympics offered the affidavit of its president who stated that the decision was made because the plaintiff had been disruptive at events and was made without any intention of causing the plaintiff emotional distress. *Id.* at 447. The Special Olympics also attached copies of the correspondence and memoranda on which it relied in making its decision. *Id.* These documents established that the plaintiff had been continually disruptive at Special Olympic events, which constituted a legitimate reason for not reinstating the plaintiff. *Id.* at 444–45, 448. This court held that "[o]nce Special Olympics presented evidence that its decision was motivated, at least in part, by a desire other than a desire to injure [the plaintiff], it was entitled to summary judgment unless [the plaintiff] provided countervailing evidence sufficient to create a factual issue as to whether Special Olympics' *sole* purpose ... was to cause [the plaintiff] extreme emotional distress." *Id.* at 443. However, the plaintiff failed to provide sufficient facts to create a genuine

issue of material fact. *Id.* at 448. "The uncontradicted evidence indicated that there was a business purpose to Special Olympics' decision." *Id.* Because there was a legitimate purpose in not reinstating the plaintiff, it cannot be true that Special Olympic acted with the sole intent to cause extreme emotional distress to the plaintiff. *Id.* Consequently, this court affirmed the grant of summary judgment.

Similarly, CMEC offered sufficient facts to permit the trial court to grant summary judgment. Although Ream's statement that he acted without any motivation to cause emotional distress would not, by itself, be sufficient to make a prima facie showing that CMEC was entitled to summary judgment, Ream also stated that he had acted to protect the interests of the cooperative. It is uncontested that the Balkes had not paid for their electricity for almost five years. This fact tends to support Ream's claim that he, as representative of the cooperative, acted with a proper motive, i.e. the decision to terminate electric service was due to the Balkes' failure to pay their electric bill.

▮▮▮ Once the moving party has made a prima facie showing that summary judgment was proper, the burden shifts to the non-moving party to show that there is a genuine issue of material fact. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

When a motion for summary judgment is made and supported as provided in this "Rule 74.04," i.e., when the movant makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial." Rule 74.04(e). [Emphasis added.]

Thus, once a movant has met the burden imposed by Rule 74.04(c) by establishing a right to judgment as a matter of law, the non-movant's only recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law.

*Id.* The Balkes failed to meet the burden imposed by Rule 74.04. At best, the Balkes' response to the summary judgment motion is nothing more than an allegation that CMEC had acted with a motivation to cause emotional distress; the Balkes do not address any of the facts that show that they had not paid any electric bill for nearly five years, nor do they cite any facts that that tends to disprove CMEC's claim that it had terminated service due to the Balkes failure to pay.[5] Because the uncontradicted evidence indicates that there was a legitimate business purpose in terminating electric service, the

---

**5.** In their response to the motion for summary judgment, the Balkes stated:

Ream's motivation in not disconnecting the electricity for five years was either his knowledge of an agreement for electrical service or CMEC counsel's advice not to disconnect until it was strategically beneficial to the Cooper County case. When the decision to disconnect was made, Mr. Ream's motivation was his belief that the Cooper County case had been settled and one may infer that he thought he was now able to cause Mr. Balke enough emotional distress that he could be forced into signing the assignment.

Balkes cannot establish that the cooperative acted with the sole motivation to cause emotional distress. "Where a desire to cause severe emotional harm is not the sole motivation for the conduct alleged, then ... suit cannot be brought for intentional infliction of emotional distress." *Special Olympics*, 31 S.W.3d at 448.

## IV. ABUSE OF PROCESS

 To recover for abuse of process, the Balkes must establish that CMEC (1) made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) for an illegal purpose; and (3) damage resulted. *Teefey v. Cleaves*, 73 S.W.3d 813, 818 (Mo.App.2002). " 'No liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be.' " *Id.* (quoting *Muegler v. Berndsen*, 964 S.W.2d 459, 462 (Mo.App.1998)).

Again, CMEC claims that it is entitled to summary judgment because it offered facts that negated an element of the Balkes' claim for abuse of process—that the cooperative had filed the underlying lawsuit for an improper purpose. In his affidavit, Ream stated that he authorized the filing of the lawsuit to recover the unpaid electric service provided to the Balkes and was "motivated by the belief that legal proceedings were appropriate for CMEC to recover for the electrical service it had provided but for which it had not been paid."

Again, the motivation behind the cooperative's conduct is the central issue. Did CMEC file the lawsuit against the Balkes for an improper purpose? CMEC offered sufficient facts to show that there was a proper purpose for its use of process. It was undisputed that the Balkes had not paid an electric bill for nearly five years.

It was undisputed that the cooperative sought payment or some assurance that payment would be made from the Balkes. From these undisputed facts, it was reasonable to state that CMEC had a legitimate purpose in filing a lawsuit against the Balkes. When a party believes it is owed money and is unable secure payment, it is understandable for that party to seek an adjudication to recover the amount it is owed.

The Balkes respond that "CMEC, through Harold Ream, filed this lawsuit in an attempt to coerce the Balkes into signing an assignment to which they had no legal right." To support this assertion, the Balkes cite a portion of Ream's deposition. However, that portion of the deposition concerns the failure to agree to the assignment and Ream's decision to terminate electric service; it does not deal with the decision to file a lawsuit against the Balkes and cannot support the assertion that CMEC filed the lawsuit with an improper purpose. Consequently, the Balkes have also failed to meet their burden that there was a genuine issue of material fact with regard to their claim for abuse of process.

## V. CONCLUSION

In sum: The law of the case doctrine is inapplicable in the way that the Balkes assert, because this court's prior opinion only established that there was sufficient evidence for the case to proceed to trial, not that the Balkes had established certain elements of their claim. Second, the Balkes have failed to address all grounds upon which summary judgment was granted. Accordingly, their appeal must fail. Even assuming that the Balkes had challenged both grounds for granting summary judgment, their lack of a sufficient response to the summary judgment motion, in light of the undisputed facts and the filed affidavit, would prevent the

Balkes from successfully resisting the summary judgment motion. Due to the foregoing, it is unnecessary for this court to decide the effect of the language of the release and settlement agreement terminating litigation between the two parties in the initial suit filed by the Balkes. The judgment is affirmed.

All concur.

## Appendix

07/92 Balkes file suit against CMEC, claiming damages to their dairy herd resulting from over-voltage caused by a defective transformer supplied by the co-op (Suit 1)

11/96 Suit 1 proceeds to trial; the jury returns a verdict in favor of the Balkes; CMEC appeals

06/97 CMEC terminates service to the Balkes' farm

07/97 CMEC files suit against the Balkes, claiming unpaid account for electricity provided from July 1, 1992 to June 1, 1997 (Suit 2)

08/97 Balkes file counterclaim against CMEC (Suit 2), claiming damages for wrongful termination of electrical services

12/97 Ct. of Appeals reverses the judgment (trial court had ruled in favor of the Balkes) in Suit 1 and remands for further proceedings (Balke I, 966 S.W.2d 15)

08/98 CMEC files motion for summary judgment on its claim for unpaid account; trial court grants CMEC's summary judgment motion

10/98 Suit 2 proceeds to trial; CMEC files motion for directed verdict on the Balkes' claim for wrongful termination; the trial court grants CMEC's motion for directed verdict

11/98 Parties enter into a settlement, ending Suit 1

01/99 Balkes appeal the trial court's grant of summary judgment and directed verdict in favor of CMEC in Suit 2

03/00 Ct. of Appeals reverses the judgment (trial court had granted CMEC's motions for summary judgment and directed verdict) in Suit 2 and remands for further proceedings (Balke II, 18 S.W.3d 46)

12/00 Balkes amend their answer and counterclaim to include two additional counterclaims: intentional infliction of emotional distress and abuse of process

01/01 Trial court decides that the law of the case doctrine does not apply to the Balkes' counterclaim for wrongful termination

07/01 Trial court grants CMEC's motion for summary judgment, dismissing Balkes' counterclaims for intentional infliction of emotional distress and abuse of process

09/01 Suit 2 proceeds to trial on remand; the jury returns a verdict in favor of CMEC on its claim for unpaid account and for CMEC on Balkes' counterclaim for wrongful termination

02/02 Balkes file this appeal (Balke III) from the trial court's grant of summary judgment in favor of CMEC on the Balkes' counterclaim for intentional infliction of emotional distress and abuse of process; Balkes also appeal the trial court's failure to apply the law of the case doctrine