**COMP & SOFT, INC.,**
**Plaintiff/Appellant,**

v.

**AT & T CORPORATION,**
**Defendant/Respondent.**

No. ED 89266.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 7, 2008.

Gregory G. Fenlon, Clayton, MO, for Appellant.

James W. Erwin, John Joseph Gazzoli, Jr., co-counsel, St. Louis, MO, for Respondent.

BOOKER T. SHAW, Judge.

Appellant Comp & Soft, Inc. (CSI) appeals the trial court's summary judgment in favor of Respondent AT & T Corporation (AT & T) on CSI's petition alleging breach of contract and related claims arising from an arrangement for the provision of information technology consultants. CSI asserts that the trial court erred in granting summary judgment because there were genuine issues of material facts in dispute. The trial court's judgment is affirmed.

### Facts and Procedural History

In 1999, AT & T was working on two projects requiring additional technical personnel for an uncertain duration. CSI was in the business of providing IT consultants for such projects. AT & T's business manager, Gina Vogler, and CSI's sales recruiter, Jeannette Massud, discussed the placement of CSI consultants on AT & T's projects and directly negotiated the itemized fee for each consultant, including hourly rates, benefits, and commissions. They also contemplated that, if the projects continued, AT & T could hire CSI's consultants, either for a fee within six months of placement or without any fee thereafter.

AT & T's internal procurement policy mandates that it contract only with "preferred" vendors. So, when the parties sought to memorialize their arrangement, one of AT & T's preferred vendors, Real Soft, Inc. (RSI), was interposed as an intermediary contracting party. AT & T and RSI had a pre-existing General Agreement pursuant to which RSI provided AT

& T with supplemental technical staff—either its own or subcontractors—and related administrative support services, such as invoicing. The General Agreement entitled AT & T to offer permanent employment to any consultant in consideration for a specified fee during the first year of an assignment or without any fee after one year. The General Agreement also entitled AT & T to assign its contractual obligations to a third party.

Downstream, RSI and CSI executed a Subcontract dated January 2000 pursuant to which CSI (defined therein as "Subcontractor") would provide its consultants "to RSI's client, AT & T Corporation," and RSI would invoice AT & T and remit payment to CSI minus a service charge of $3 per consultant hour. The Subcontract contains no reflection of Vogler's and Massud's discussion of right-to-hire fees payable to CSI, but it incorporates by reference the General Agreement between AT & T and RSI entitling RSI to hiring fees within the first year.

In April 2002, AT & T assigned its administrative duties under the General Agreement to ProcureStaff, Ltd., thus interposing another degree of removal between AT & T and CSI. Under this arrangement, RSI submitted consultant invoices to ProcureStaff, which collected payment from AT & T and remitted it to RSI minus a 3.5% commission. RSI passed on the commission to CSI in addition to RSI's own $3/hour service charge. In addition, following an exchange between Vogler and Massud regarding the waiver of placement fees, RSI informed CSI in writing that it would not seek to collect the placement fees to which it was entitled under the General Agreement for 25 CSI consultants whom AT & T hired prior to their first anniversary on assignment.

In May 2002, CSI filed suit against RSI for breach of contract, seeking damages and rescission. CSI's attempts to join AT & T and ProcureStaff as parties in that action were unsuccessful. In June 2003, CSI and RSI entered into a settlement agreement intended to resolve all disputes relating to the payment of outstanding invoices, the submission and payment of future invoices, the allocation of ProcureStaff fees, and the waiver of hiring fees. The settlement also contained a mutual release discharging each party from further liability arising from the subject matter of the underlying lawsuit.

In August 2003, CSI filed a motion to enforce the settlement against RSI. One month later, CSI filed the present action against AT & T on five counts: (I) tortious interference, (II) quantum meruit, (III) breach of contract, (IV) negligent misrepresentation, and (V) suit on account. The trial court consolidated the two cases and, in December 2006, entered its judgments (1) in favor of CSI with respect to the settlement, ordering RSI to pay $110,000 in damages and $25,000 in attorney fees and (2) in favor of AT & T on its motion for summary judgment on all five counts. CSI appeals the latter, claiming essentially that genuine issues of material fact exist with respect to each count.

### Discussion

*Preservation*

■■■ As a preliminary matter, AT & T urges this court to dismiss CSI's appeal for failure to comply with Rule 84.04(d). Specifically, CSI's point relied on states, "The trial court erred in granting summary judgment in favor of defendant AT & T on all counts of plaintiff's five count petition because the evidence, viewed in a light most favorable to plaintiff, demonstrated that plaintiff was entitled to the relief and damages sought." A brief impedes disposition on the merits when it is so deficient that it fails to give notice to

this court and to the other parties as to the issues presented on appeal. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. 1997). Here, we are able to ascertain the gist of CSI's arguments despite the shortcomings of its brief. As a matter of policy, the court prefers to decide cases on their merits whenever possible and therefore elects to review this appeal *ex gratia. Id.*

### Standard of Review

"The purpose of summary judgment is to resolve cases in which there is no 'genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' Rule 74.04(c)(6)." *Grattan v. Union Elec. Co.*, 151 S.W.3d 59, 61 (Mo.2004). A genuine dispute exists where the record contains competent evidence of plausible but contradictory accounts of essential facts. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo.1993). Where the "genuine issues" raised by the non-movant are merely argumentative or imaginary, summary judgment is proper. *Id.* Appellate review of summary judgment is *de novo*, viewing the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376.

AT & T asserted seven theories in support of its motion for summary judgment. The trial court's judgment does not identify the basis for its ruling. "A trial court's order is presumed to have based its decision on the grounds specified in respondents' motion if the trial court's order does not set forth its reasoning." *Central Missouri Elec. Co-op. v. Balke*, 119 S.W.3d 627, 635 (Mo.App. W.D.2003). "Where a trial court has granted summary judgment without specifying the basis upon which the motion was granted, this court will affirm the grant of summary judgment

under any appropriate theory." *Id.* We address each theory in the order presented by the parties.

### Release Under Settlement Agreement

First, AT & T claims that it was released from any liability to CSI by virtue of the Settlement Agreement between CSI and RSI. AT & T characterizes the agreement as a general release disposing of "the whole subject matter or cause of action," even as to non-parties. *Liberty v. J.A. Tobin Construction Co., Inc.*, 512 S.W.2d 886, 890 (Mo.App.1974). AT & T also cites language in the Settlement Agreement releasing not only the signatory entities but also "all persons acting by, through or under them." We find dubious the inference that AT & T conferred upon RSI such agency authority to impute AT & T as a party or beneficiary.[1] The document is titled *Mutual* Release and Settlement Agreement and names only CSI and RSI as Parties.

Interpretation of a release is governed by the same principles applicable to any other contractual agreement, and the primary rule of construction is to give effect to the parties' intent, which is to be determined solely from the four corners of the contract itself. *Crumbaker v. Zadow*, 151 S.W.3d 94, 97–98, (Mo.App. E.D.2004). A release which, on its face, does not apply to claims against a party who was not a signatory to the agreement, and who has not been shown to be otherwise subject to its terms or intended to be included in the scope of the release, does not apply to that party. *Id.* "Any question regarding the scope and extent of the release is to be resolved according to what may fairly be said to have been within the contemplation of the parties at the time the release was given. This, in turn, is to be resolved in

---

1. Various provisions of the General Agreement indicate otherwise. For example, each purchase order requires the signature of an authorized AT & T representative.

light of all the surrounding facts and circumstances under which the parties acted." *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo.1993). The record provides no indication that CSI or RSI intended or even contemplated that their mutual settlement agreement would result in a general release benefiting AT & T. AT & T's first theory does not support summary judgment.

### Collateral Estoppel

 As its second theory for summary judgment, AT & T argued that CSI is barred from relitigating counts II (quantum meruit), III (breach of contract), and V (action on account) by virtue of the doctrine of collateral estoppel. "Before giving preclusive effect to a prior adjudication under collateral estoppel principles, the Court must consider four factors: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *James v. Paul,* 49 S.W.3d 678, 682 (Mo.2001).

 CSI focuses on the second factor, noting that its earlier claim against RSI resulted in a settlement and stipulation for dismissal with prejudice, without a final adjudication on the merits. The Supreme Court of Missouri instructs us that dismissal actually adjudicates nothing. It merely serves as a mechanism for the termination of litigation rather than adjudication of the issues. *Denny v. Mathieu,* 452 S.W.2d 114, 118 (Mo.1970). Moreover, as neither party briefed the first factor,[2]

we decline to assume that the issues—namely whether AT & T had some quasi-contractual obligations to CSI—are identical to those ultimately settled with RSI.[3] AT & T's theory based on collateral estoppel does not support the trial court's summary judgment as to counts II, III, and V.

### Tortious Interference

 Count I of CSI's petition alleged that AT & T tortiously interfered with CSI's relationships with its consultants by hiring them away from CSI. One of the *prima facie* elements of tortious interference is the absence of justification. *SSM Health Care, Inc. v. Deen,* 890 S.W.2d 343, 346 (Mo.App. E.D.1994). In its motion for summary judgment, AT & T asserted that it had justification in that it was entitled to hire CSI's consultants pursuant to the terms of the General Agreement with RSI. Specifically, paragraph 25 of the General Agreement permits AT & T to offer employment to any consultant after one year on assignment without a fee, or before then for a fee. The right to enforce or waive this contractual provision was vested in the other signatory to the agreement, RSI, not CSI. RSI discussed the waiver of placement fees with CSI, obtained CSI's accord through Vogler, and confirmed to CSI in writing that it would not seek to collect the fees payable under the General Agreement. CSI's Subcontract with RSI makes no reference to placement fees, and all but one of the 25 hires in question occurred after the 6–month window originally discussed between Vogler and Massud.

The record contains no evidence creating a genuine issue of material fact on CSI's claim of tortious interference. The trial court's summary judgment as to count I was proper.

---

2. AT & T fails to respond to this entire subpoint and thus appears to have abandoned it.

3. The trial court's denial of CSI's joinder motions suggests that it found otherwise.

*Quantum Meruit*

Count II of CSI's petition asserts a claim for quantum meruit. "Quantum meruit is based on a promise implied by the law that a person will pay reasonable compensation for valuable services or materials provided at his request or with his approval." *Kickham v. Gardocki,* 966 S.W.2d 361, 363 (Mo.App. E.D.1998). In its motion for summary judgment, AT & T argued that quantum meruit is inapplicable where an express written agreement governs and identifies the source of payment. See for example *State ex rel. Danforth v. Kansas City Fire Fighters Local No. 42,* 585 S.W.2d 94, 97 (Mo.App. W.D.1979)(rejecting quantum meruit claim where contract contemplated payment by a third party), and *Krupnick & Associates, Inc. v. Hellmich,* 378 S.W.2d 562 (Mo.1964)(express contract regarding source of compensation precludes a finding of implied contract to compensate from a different source). We recognize that the cases cited by AT & T are distinguishable in that the litigants were parties to the very agreements precluding quantum meruit. Here, there is no contractual privity between CSI and AT & T. However, the terms of the General Agreement were incorporated by reference into the Subcontract, therefore CSI is bound to the payment arrangements set forth in both documents, neither of which provides recourse against AT & T. Despite the absence of privity, the agreements, when read together, clearly intend to govern the rights and obligations of the parties with respect to payment so as to preclude the inference of an alternate implied contract to support a claim for quantum meruit.

But CSI's claim also fails for reasons independent of the aforementioned agreements. The subcontract arrangement is analogous to a construction project where AT & T is in the position of the landowner, RSI the general contractor, and CSI the subcontractor. AT & T cites a line of construction cases where subcontractors sought recovery from owners after general contractors defaulted. In those cases, the courts explained that, because the purpose of quantum is to prevent unjust enrichment, non-payment by the owner must be pleaded and proved to establish a cause of action. *Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261, 265 (Mo.App. W.D.1984). While CSI's petition does plead non-payment, the voluminous record contains no evidence by which CSI could prove it. In deposition testimony, CSI's president admits he has no evidence of non-payment, and ProcureStaff's accountant confirms that AT & T paid all its invoices. CSI complains that AT & T has refused to produce records requested in discovery, but we respect the broad discretion of the trial court to resolve such matters. *State ex rel. Martel v. Gallagher,* 797 S.W.2d 730 (Mo.App. E.D.1990). The record before this court does not provide a basis for a finding of unjust enrichment needed to support a claim for quantum meruit.

The trial court's grant of summary judgment on count II was proper.

*Breach of Contract*

Count III of CSI's petition alleges that AT & T breached an oral agreement formed by virtue of negotiations between Vogler and Massud. AT & T moved for summary judgment on the basis that no contractual relationship existed between the parties, and CSI was not a third-party beneficiary of the General Agreement. Rather, the Subcontract superseded any conversations between the parties' managers, particularly in light of the merger clause contained in the General Agreement and incorporated by reference into the Subcontract.

In the absence of fraud, which is not alleged here, a valid written contract

merges all prior and contemporaneous negotiations on the subject. 17A C.J.S. Contracts 417 (2008). As discussed *supra,* all parties clearly intended for the Subcontract and General Agreement to govern all aspects of their business relationship such that no separate and direct oral agreement between CSI and AT & T could be viewed to have survived.

■ CSI also claims that a direct agreement with AT & T arose from specific purchase orders for consultant services. The record contains no document resembling a purchase order naming AT & T as the customer and CSI as the direct provider. The agreements provide, and witness testimony confirms, that AT & T issued purchase orders to RSI and ProcureStaff.

The record belies CSI's breach of contract claim. The trial court's grant of summary judgment on count III was proper.

*Negligent Misrepresentation*

■ Count IV of CSI's petition alleges negligent misrepresentation[4] on the part of AT & T in the form of Vogler's statements to Massud during the course of their negotiations. In particular, CSI alleges that Vogler falsely assured Massud that AT & T would not hire away CSI's consultants, and further that Vogler knew or should have known that the cost breakdowns were inaccurate because they did not reflect additional fees that AT & T might impose subsequently (*e.g.*, ProcureStaff's 3.5 commission).

In its motion for summary judgment, AT & T argued that a party's statement of future intent or failure to accurately predict future circumstances does not give rise to a claim of negligent misrepresentation. AT & T cites *Hoag v. McBride Son Invest. Co.*, 967 S.W.2d 157 (Mo.App. E.D. 1998), where this court rejected a claim of negligent misrepresentation against a land developer who revised its development plan for a small tract of land by obtaining commercial zoning approval for what was originally intended for public use. There, we noted that "it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions. Even if the speaker is merely uncertain regarding the truth of the statement of future intention, the statement is fraudulent rather than negligent because the speaker is ignorant of the statement's truth." *Id.* at 174 (citations omitted). Similarly, we find no negligence on the part of Vogler for failing to predict AT & T's decision—over two years later—to inject ProcureStaff as an additional link in the chain, or RSI's decision to pass ProcureStaff's commission onto CSI.

Independent of the foregoing, the record does not support CSI's allegations or justify CSI's reliance on the alleged statements. On the contrary, the electronic correspondence and attachments exchanged between Vogler and Massud as well as the Subcontract and General Agreement clearly contemplate AT & T's right to hire. We find no evidence that Vogler made any assurances that AT & T would not hire CSI's consultants, as CSI alleged in its petition. The General

---

4. To maintain a cause of action for negligent misrepresentation, a plaintiff must establish that: (1) the speaker supplied information in the course of his or her business or because of some pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided information for the guidance of a limited group of persons in a particular business transaction; (4) the plaintiff justifiably relied on the information; and (5) as a result of the plaintiff's reliance on the statement, he or she suffered a pecuniary loss. *General Elec. Capital Corp. v. Rauch*, 970 S.W.2d 348, 354–355 (Mo.App. S.D. 1998). Here, the parties dispute whether CSI established the second element.

Agreement also expressly entitles AT & T to assign its obligations thereunder to a third party, thereby imputing to CSI some constructive notice of the eventuality of an additional intermediary. The trial court's summary judgment on count IV was proper.

*Suit on Account*

■■■■ Count V of CSI's petition asserted an action on account seeking $435,607.58 in fees for the services of consultants placed on assignment at AT&T. An action on account is based on contract. *Dyna Flex Ltd. v. Charleville*, 890 S.W.2d 413, 414 (Mo.App. E.D.1995). A plaintiff must demonstrate an offer, an acceptance, consideration between the parties, the correctness of the account, and the reasonableness of the charges. *Id.* AT & T *moved for* summary judgment arguing that no account—no contract—existed between the parties. As discussed *supra,* we agree. The trial court's judgment on count V was proper.

## Conclusion

The record contains no competent evidence to render plausible CSI's version of the essential facts. The judgment of the trial court is affirmed.

Lawrence E. Mooney, P.J., and KURT S. ODENWALD, J., concur.