**CITY OF WENTZVILLE, Respondent,**

v.

**Shirley May DODSON, Appellant.**

**No. ED 82994.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 27, 2004.

Steve Koslovsky, St. Louis, MO, for appellant.

Robert M. Wohler, O'Fallon, MO, for respondents.

MARY R. RUSSELL, Judge.

Shirley May Dodson ("Landowner") appeals from the judgment authorizing the City of Wentzville ("City") to condemn a portion of her property. She asserts three points of error. First, she contends that the trial court erred in entering an order condemning a portion of her property in that City sought the condemnation for the purpose of creating contiguity with another parcel that it was seeking to voluntarily annex. Second, she argues that the trial court erred in entering an order condemning her property as a fee interest, as a fee interest was not necessary to accomplish City's stated purpose of extending sewers across the land. Third, she asserts that the trial court abused its discretion in denying her motion to continue the condemnation hearing to allow her to conduct limited discovery on the issues of proper purpose and necessity of City's condemnation action. We agree as to Landowner's third point and find this issue dispositive of her appeal. We reverse and remand to the trial court for retrial in accordance with this opinion.

Landowner is the owner of 191 acres of undeveloped property in unincorporated St. Charles County that abuts the boundaries of City. Landowner's property lies between City and property owned by Harold Burkemper (known as "the Burkemper Property"). City sought to voluntarily annex the Burkemper property pursuant to section 71.014 RSMo.2000,[1] and to thereafter rezone it from agricultural use to single-family residential use for the purposes of developing single-family homes. Under section 71.014, City could not accomplish the voluntary annexation of the Burkemper property unless it was "contiguous and compact to [City's existing boundaries]." Landowner alleges that City sought to condemn a strip of her property abutting the Burkemper property in order to create the necessary contiguity to effectuate the section 71.014 voluntary annexation of the Burkemper property. City asserted that condemnation of the strip was necessary to its constructing sewer carriage, water line improvements, and roads in the area. The strip of land at issue is 40 feet wide and 2,038 feet long. City sought to condemn a fee simple interest in the property, rather than an easement. It authorized the acquisition of the strip by an ordinance, and offered Landowner to purchase the property. When Landowner would not sell, City subsequently filed a Petition for Condemnation in St. Charles Circuit Court on December 23, 2002, seeking an order condemning the strip.

The hearing on City's petition was held 32 days later, on January 24, 2003. Two days prior to the hearing, Landowner filed a motion to continue the hearing so that she could conduct limited discovery. She stated the discovery was necessary to ascertain whether City's purpose in condemning her property was to create contiguity with the Burkemper property, not to serve the public welfare by construction of sewer improvements or roads. She also sought limited discovery on the issue of whether City had the power to condemn a fee interest in the property. Landowner orally renewed her motion to continue at the hearing on January 24. The trial

1. All further statutory references are to RSMo.2000 unless otherwise indicated.

court, however, denied her motion to continue and the hearing proceeded.

Only one witness testified at the condemnation hearing, William Bensing, Jr., City's Director of Public Works ("Director"). Director testified regarding the adequacy of City's current sewer system and the growth occurring in the area near the Dodson property. He agreed with City's attorney that the area involved in this condemnation was within the "Comprehensive Plan" of City's growth area and was projected for residential development. Director acknowledged that he and other City representatives had discussed with Landowner and her son their concerns regarding development on Landowner's property, and that "there [had] been extensive negotiations" about running a sewer line along the edge of her property. Director agreed with City's attorney's characterization that the sewer line extension on Landowner's property would serve a public safety purpose. He testified that City's Board of Aldermen passed an ordinance authorizing City to proceed with a sewer line condemnation of the 2,038 feet long by 40 feet wide portion of Landowner's property, approximately 1.871 acres, abutting the Burkemper property. Director admitted that the sewer line extension on this property would serve the Burkemper property and other properties in the area, but he stated it was not specifically designed for any particular developer.

Director testified that City had tried to acquire an easement of Landowner's property from her, but was unable to do so. He stated that he did not understand fully the issue of City's seeking to condemn a fee simple interest in her property, but he did acknowledge that, from an engineering perspective, City only needed an easement in order to construct the desired sewer works. He testified also, though, that City had acquired fee ownership on some occasions in the past, based on the direction of the Board of Aldermen.

On cross-examination, Director testified that the purpose of condemning the strip of Landowner's property was to serve the general public purpose of extending sewers, and that it was not in relation to any proposed development of the Burkemper property. Director also testified that the voluntary annexation petition for the Burkemper property had been pending for several months, but City could not yet act on it because that property was not yet contiguous to City. Landowner's attorney asked Director: "Wouldn't you agree with me that at least one of the reasons that [City sought] condemnation of [the strip of Landowner's property] was to allow the annexation of [the Burkemper property] to be completed? In other words, to allow [the Burkemper property] to be annexed by [City]?" Director responded: "That could be a purpose, yes." Landowner's attorney concluded his cross-examination of Director by asking him whether the condemnation action against Landowner's property had arisen because the Burkemper property wished to be annexed and developed into a residential area. Director responded: "Yes. And their inability to get public sewers any other way."

On January 28, 2003, the trial court entered an order declaring the strip of Landowner's property condemned and appointing Commissioners to assess the damages to her. The Commissioners subsequently filed a report on February 15, 2003, to which Landowner initially filed exceptions. She dismissed her exceptions, however, on April 2, 2003. On April 14, she filed her notice of appeal to this court. Before addressing Landowner's points on appeal, we first address City's assertions that her appeal should be dismissed.

City asserts that Landowner's appeal should be dismissed on three grounds.

First, it asserts that she forfeited the right to appeal because she accepted the benefits of the Commissioner's Award by withdrawing the funds from the circuit court registry. On this issue we can determine from the record that although City paid the $50,000 the Commissioners ordered it to pay Landowner for the condemnation into the registry of the circuit court, there is no indication on the record showing that she withdrew the award. We have no evidence leading us to disbelieve her assertions that she did not withdraw the Commissioners' Award, and thereby did not defeat her right to appeal from the entry of the Order of Condemnation.

■■■■ City's second assertion for dismissing Landowner's appeal is that her dismissal of her exceptions to the Commissioners' Award amounted to a dismissal of the entire case, leaving nothing to be appealed. We disagree. Landowner was the defendant in City's condemnation action, and only a plaintiff has the power to voluntarily dismiss an action. Rule 67.02. Additionally, Rule 86.08 gives each party in a condemnation action the right to file exceptions to the Commissioners' Award, which allows the issue of damages to be finally determined by a jury trial. Either party may voluntarily dismiss its filing of exceptions. In fact, until the exceptions filed to the Commissioners' Award are dismissed and the award is finally approved, the trial court's order of condemnation is not final and appealable. *State ex rel. Union Elec. Co. v. Godfrey,* 673 S.W.2d 14, 16 (Mo.1984). The dismissal of exceptions, however, affects only the right to a trial on the issue of damages awarded by the commissioners, and does not impact the parties' right to appeal the underlying court order on the condemnation petition. *See id.*

■■■■ City finally contends that Landowner's appeal should be dismissed because her notice of appeal was untimely

filed. She filed her notice of appeal on April 14, 2003. Attached to this initial filing was the trial court's order denominated "Order Appointing Commissioners," which both ordered the condemnation of the strip of Landowner's property and appointed commissioners to determine her damages. The docket entries in the circuit court indicate confusion as to whether the Order Appointing Commissioners was the judgment from which Landowner was appealing. We issued an order dated September 29, 2003, indicating nothing in the legal file submitted in this appeal contained a judgment. According to Rule 74.01, a judgment is entered only when a writing, signed by a judge, and denominated "judgment" or "decree" is filed. On October 10, 2003, the trial court retitled the "Order Appointing Commissioners" to "Judgment and Order Appointing Commissioners," thereby bringing it into compliance with Rule 74.01(a). The substance of the order remained unchanged, and the retitled order was filed with our court. On October 29, 2003, we issued an order indicating that we presumed that this was the judgment that Landowner was appealing.

Under Rule 81.05(a)(1), a judgment becomes final at the expiration of 30 days after its entry if no timely authorized after-trial motion is filed. In this case, the judgment from which Landowner appealed was entered on October 10, 2003, when it was denominated a judgment. Under Rule 81.05(b), if a notice of appeal has been filed prematurely, it will be considered as filed immediately after the time the judgment becomes final for the purpose of appeal. Thus, Landowner's filing of her notice of appeal on April 14, 2003, was timely, and we have jurisdiction to consider her appeal.

■■■■ Because we find Landowner's third point dispositive, we address it first. In her third point on appeal Landowner as-

serts that the trial court erred in denying her motion to continue the condemnation hearing, which requested that she be permitted time to conduct limited discovery on the issues of the purpose and necessity of the City's condemnation of her property. Landowner asserts that the trial court's denial of this motion prejudiced her ability to present evidence in opposition to the City's condemnation action.

We review the validity of orders of condemnation de novo, but give due deference to, and cannot substitute our judgment for, the legislative body that authorized condemnation. *Schweig v. Maryland Plaza Redevelopment Corp.*, 676 S.W.2d 249, 254–55 (Mo.App.1984). Our review of a court's decision regarding a request for continuance and discovery, however, is under an abuse of discretion standard. *Wilson v. River Mkt. Venture, I, L.P.*, 996 S.W.2d 687, 693 (Mo.App.1999). We allow the trial court broad discretion in the control and management of discovery, but we will find it abused its discretion if its ruling was clearly against the logic of the circumstances then before it and so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. *State ex rel. Lichtor v. Clark*, 845 S.W.2d 55, 59 (Mo.App. 1992).

Actions for condemnation involve a two-step process. *State ex rel. Rantz v. Sweeney*, 901 S.W.2d 289, 291 (Mo.App.1995). First, the trial court determines whether the condemnation is authorized by law. *Id.* Second, it establishes the landowner's damages resulting from the taking, and at this stage commissioners are appointed to assess the damages. *Id.* Upon payment of the commissioners' award, the condemning authority acquires the property and can proceed to use it as outlined in its condemnation petition. *Seliga Shoe Stores, Inc. v. City of Maplewood*, 558 S.W.2d 328, 332 (Mo.App.1977).

The first part of the process, the condemnation determination, is at issue in this appeal. The condemnation hearing is the evidentiary hearing whereby the court determines the power of the condemning authority to condemn the defendant landowner's property. *Rantz*, 901 S.W.2d at 291. At this stage of the condemnation proceedings, trial courts can investigate the necessity of the taking "only upon a landowner alleging and proving the condemnor's claim of necessity for the taking constitutes fraud, bad faith or an arbitrary or unwarranted abuse of discretion". *Id.* (internal citations omitted). Generally, however, the purpose of a condemnation action is open to judicial investigation, although we cannot question the motive of such an action. *In re Armory Site in Kansas City*, 282 S.W.2d 464, 468 (Mo. 1955). While purpose and motive are sometimes used synonymously, in the context of judging condemnation actions, they are distinguishable in that motive refers to "that which prompts the choice or moves the will thereby inciting or inducing action," and purpose refers to "that which one sets before himself as the end, aim, effect, or result to be kept in view or object to be attained." *City of Kirkwood v. Venable*, 351 Mo. 460, 173 S.W.2d 8, 12 (1943) (internal citations omitted), *holding questioned on other grounds by Bueche v. Kansas City*, 492 S.W.2d 835, 839 (Mo. 1973) *and by St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372, 374 (1949). The purpose of a condemnation action is subject to judicial scrutiny because it is the basis on which the authority to condemn rests. *Id.*

Landowner sought to defend against the condemnation action on her property by showing that City did not have authority to condemn her property. She wished to show that City sought to condemn the strip of her property abutting the Burkemper property to create contiguity between

that property and City's boundaries so that it could be voluntarily annexed, not to extend public utilities or roads to the area. She sought a continuance, by written and oral motion, seeking time to conduct limited discovery regarding the purpose and necessity of City's condemnation action. She asserts that her ability to present a defense to the condemnation action was hindered by the trial court's refusal to allow her to conduct such limited discovery.

Rule 56.01(b)(1) outlines the general provisions governing discovery. It states:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Rule 56.01(b)(1).

To be entitled to sweeping discovery, a party must show, by motion or otherwise, that there are reasonable grounds to believe that the discovery sought is relevant to the subject matter involved in the pending action. *Black & White Cabs of St. Louis, Inc. v. Smith*, 370 S.W.2d 669, 678 (Mo.App.1963). Discovery, however, is not meant to be unlimited, and the rules of discovery contemplate the exercise of judicial discretion in limiting discovery. *State ex rel. Hoffman v. Campbell*, 428 S.W.2d 904, 906 (Mo.App.1968).

Landowner cited *State ex rel. Missouri Highway & Transportation Commission v. Bush*, for the proposition that she was entitled to conduct limited discovery. 911 S.W.2d 690 (Mo.App.1995). City, however, argues that *Bush* indicates that defendant landowners should not be permitted to delay condemnation proceedings by conducting discovery "fishing expeditions."

In *Bush*, we issued a writ of prohibition precluding a trial court judge from allowing the defendant landowners in that case from taking depositions of three engineers during the first step of the condemnation process. 911 S.W.2d at 691–92. We found that the landowners were not entitled to this discovery because they alleged no facts, and made only conclusory allegations, as to their affirmative defense. *Id.* at 692. Because we found nothing in the landowners' answer or briefs identifying the facts entitling them to their defense, we viewed their request for discovery as a "fishing expedition to see if some possible attack on the necessity of the condemnation [could] be found." *Id.*

We distinguished the facts in *Bush*, however, from the Southern District's holding in *State ex rel. Rantz v. Sweeney*, 901 S.W.2d 289. *Id.* In *Rantz*, the court held that discovery was not precluded at the initial hearing phase of a condemnation proceeding after considering the purpose of discovery and its applicability to the circumstances to be evaluated. 901 S.W.2d 289 at 292–293. In *Rantz*, the defendant landowners set forth allegations that the condemning authority was seeking condemnation for purposes other than those it claimed, and presented newspaper articles supporting their allegations. *Id.* at 290–91. The *Rantz* court pointed out that trial courts can inquire into questions relating to the necessity of a taking only upon a landowner alleging and proving the condemnor's claims of necessity constituted fraud, bad faith, or arbitrary and unwarranted abuse of discretion. *Id.* at 291. It found that the landowners were entitled to conduct limited discovery directed to the issue of the condemning authority's power to condemn the property at issue so that they could fairly present the contro-

versy to the trial court. *Id.* at 292–93. The court found that the defendant landowners were entitled to have access to relevant information prior to trial relating to the issues that they wished to argue in defense of the condemnation action. *Id.* at 292–93. The *Rantz* court noted that the "[r]ules relating to discovery are designed to eliminate, to the extent possible, concealment and surprise in trials of lawsuits and to provide parties access to anything 'relevant' to the subject matter of the cases not otherwise privileged." *Id.* at 292 (citing *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 927 (Mo. banc 1992)). It pointed out that discovery rules are designed to preserve evidence, rather than conceal it, and to aid litigants and the court in determining facts that are in issue prior to trial. *Id.* at 292–93.

Considering the purpose of discovery and the circumstances to be evaluated in this case, we find that the trial court erred and abused its discretion when it denied Landowner's motion to continue that sought time to conduct limited discovery. This case is distinguishable from *Bush* in that we find no evidence on the record that suggests that Landowner sought to unnecessarily delay City's ability to utilize her property by seeking to conduct a discovery "fishing expedition." Although City correctly cites *State ex rel. Missouri Highway and Transportation Commission v. Anderson*, 735 S.W.2d 350, 352 (Mo. banc 1987), for the proposition that the two-step condemnation process is designed to prevent a single objecting landowner from delaying a condemning authority's project, we see nothing in the record suggesting that Landowner's discovery request was a delaying tactic. Instead, she sought to conduct limited discovery related only to her defense against City's condemnation action. The trial court could have specifically limited the scope and timeline for this discovery without causing undue delay in the condemnation proceeding, and could

have thereby given her a chance to preserve the evidence needed to present her defense.

The condemnation action against Landowner was filed only 32 days prior to the initial hearing. City presented no evidence that it needed her property to be immediately condemned or that it would be prejudiced if her motion to continue was granted. City's assertions that Landowner was involved in negotiations with City regarding the land at issue prior to the condemnation action are unpersuasive. We find no authority that holds that negotiations between parties defeat the right to discovery related to a condemnation action.

This case is further distinguishable from *Bush* in that Landowner has elicited more than conclusory allegations questioning City's purpose. While she did not have an opportunity to collect evidence prior to trial to support her allegations that City acted to condemn her property for an improper purpose, she was able to elicit testimony from Director during the initial hearing that supported her allegations. Director acknowledged at the hearing that providing contiguity to the Burkemper property could be a reason City sought to condemn the strip of Landowner's property that abutted that property. We find Director's testimony illustrative of the type of information Landowner was entitled to discover prior to trial in order to present her defense to the court.

For these reasons, we reverse the entry of the order of condemnation in this matter and remand to the circuit court for retrial of City's petition following a reasonable period of time for Landowner to conduct limited discovery relating to City's purpose in seeking the condemnation of her property and the necessity of doing so, as she requested in her motion to continue. We note that at oral arguments Landowner indicated that the discovery she sought

would be limited to the following: (1) a deposition of Director; (2) a deposition of a representative of the Burkemper property; and (3) a review of City's documents, especially as they relate to the sequence of events leading to bringing this condemnation action. We see no prejudice to City if Landowner is granted a reasonable amount of time to conduct such limited discovery.

Because our disposition of Landowner's third point is dispositive, we decline to address her first two points.

GARY M. GAERTNER, SR., P.J., and ROBERT G. DOWD, JR., J., concur.