**James DOYLE, et al.,
Plaintiffs/Respondents,**

v.

**FLUOR CORPORATION, et al.,
Defendants/Respondents,**

**Joseph Miller, et al.,
Objectors/Appellants.**

**No. ED 98462.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 15, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 21, 2013.

Application for Transfer Denied June 25, 2013.

318

Mark I. Bronson, St. Louis, MO, Steven M. Bronson, Gerson Smoger, Dallas, TX, James R. Dowd, Clayton, MO, for Appellants.

Maurice B. Graham, John Henry Quinn III, Andrew Rothschild, Ted Perryman, Theodore Williams, Edward L. Dowd, Jr., Thomas Ward, St. Louis, MO, Kevin Scott Hannon, Denver, CO, for Respondents.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

Appellants appeal the trial court's judgment approving a class action settlement in favor of Herculaneum residents whose real property was affected by the Doe Run lead smelter. We affirm.

## Background

Appellants are 28 objectors in a class of over 700 Plaintiffs (collectively, the Class) who suffered nuisance and damage to their real property as a result of toxins emitted from Doe Run. The Class is represented by six named Plaintiffs (the Representa-

tives). Defendants are entities and executives associated with the smelter.

The Doe Run smelter was established in 1892 and came under environmental scrutiny in the 1980s due to elevated levels of lead in the soil of residential neighborhoods near the facility. As relevant here, soil remediation (*i.e.*, replacement) began in 1991 and accelerated beginning in 2001 pursuant to a consent decree between Defendants and the Environmental Protection Agency. By 2007, 524 properties in Herculaneum had been remediated. Concurrent with remediation, in 2002 Defendants agreed, in cooperation with the Missouri Department of Natural Resources, to offer to purchase all of the residential properties within approximately three-eighths of a mile of the smelter. Properties in the buy-out zone had been remediated first, as they were closest to the smelter, and to date nearly all properties in Herculaneum have been remediated except for "a few" at the outskirts. Twenty-four of the 28 Appellants are former property owners who sold their property to Defendants under the purchase program. The remaining four are current owners still residing in Herculaneum.

From the protracted procedural history of this case, highlights relevant to the issues on appeal here can be summarized as follows. The Representatives filed their petition July 9, 2001. At the time, all six Representatives owned real property in the area affected by Doe Run. In 2005, the Class was certified to include "all persons who own residential real property" in a defined geographic area of Herculaneum. The Class contained two sub-classes: owners whose property had been remediated and owners whose property had not been remediated. In 2006, two of the Representatives sold their property and moved. In February 2010, in its order approving notice to the Class, the trial court clarified

that the Class included not only current owners but also previous owners back to the date of the petition. In anticipation of an appeal of that order, the notice form in the court file was left blank where the opt-out date was to be indicated. Indeed, the order was appealed and ultimately upheld. *State ex rel. Doe Run v. Van Amburg,* ED 94282 (Mo.App. E.D. March 12, 2010). Notice was achieved by publication and by direct mail, posted March 23, 2010, to all Class members. That notice described the lawsuit, identified the Class and its Representatives, summarized Class members' rights, explained members' participation options, and provided instructions for opting out of the action. The direct mail notice specified an opt-out deadline of May 4, 2010, but the published notice did not specify a date. Three individuals opted out of the suit.

In February 2012, after over a decade of litigation, Representatives and Defendants (together here, Respondents) reached a settlement agreement whereby, in consideration for the Plaintiffs' release of all property-related claims,[1] Defendants would disburse $55 million, to be distributed to the Class pursuant to an allocation plan. Under that plan, after attorney fees and other set-asides,[2] two-thirds of the fund was designated as nuisance compensation allocated to both past and present owners, calculated by function of their duration of ownership. The remaining one-third was allocated to current owners only,

calculated in terms of the remediable surface area of their property.[3] Each Representative submitted an affidavit to the trial court expressing approval of the settlement agreement and allocation plan and specifically confirming their belief that the arrangement was fair and in the best interests of the Class.

A month later, on the eve of judicial approval of the settlement—two years after notice of the action and 22 months after the opt-out deadline—Appellants[4] moved to intervene and objected to the entire transaction, claiming that notice was inadequate and the allocation plan unfair. All parties appeared before the trial court for the final approval hearing March 15, 2012. In addition to evidence supporting approval of the settlement, the trial court also heard arguments on Appellants' motions and objections. Ultimately, the trial court approved the settlement agreement and allocation plan over Appellants' objections, and this appeal followed. Appellants claim that they were denied adequate notice of the action, specific representation of their interests, and meaningful discovery on the environmental rationale for the allocation plan. Additional facts are presented below as relevant to the particular issues.

## I. *Class Representation*

 For their first point,[5] Appellants assert that the settlement is not "fair,

---

1. This suit involves property claims only; the settlement agreement specifically excludes personal injury claims.

2. Attorneys' fees represented 25% of the total settlement amount. Other designations covered litigation costs, bonus payments to the Representatives, and a contingency fund of $500,000.

3. For clarity, Defendants bear the actual cost of remediation pursuant to the EPA consent decree and not under the settlement. The

settlement merely calculates each owner's property damage using "remediable" surface area as the multiplier.

4. There were originally 34 Appellants named in the motion to intervene. None appeared for the March 15 fairness hearing. At the time of oral argument before this court, counsel reported that there remained 28 Appellants.

5. As a preliminary matter, Respondents submit that Appellants' entire appeal should be

reasonable, and adequate" because the Representatives did not sufficiently represent the interests of the whole Class. As a threshold matter, Respondents counter that Appellants' point is untimely because, despite their longstanding knowledge of the Representatives, they didn't raise this issue until after the final approval hearing in March 2012. Appellants do not allege that they failed to receive notice of the action in 2010 (including identification of the Representatives and the Class); none of them elected to opt out at that time; and the record suggests that Appellants' counsel was well aware of this case throughout its evolution.[6] Yet Appellants never challenged the adequacy of representation at any time prior to 2012, or in the written objections accompanying their motion to intervene filed in February of that year, or in oral arguments thereon before the trial court on March 15. Rather, Appellants raise this issue for the first time in their post-hearing pleadings. Missouri law is clear that an appellate court will not convict a trial court of error on an issue that was not put before it to decide. *Sheedy v. Missouri Highways and Transp. Com'n.*, 180 S.W.3d 66, 71 (Mo. App.2005). More specific to class repre-

sentation, while our research uncovered no Missouri case on point, Respondents offer well-reasoned authority from other jurisdictions holding that belated objections are deemed waived. See *Joel A. v. Giuliani*, 218 F.3d 132 (2nd Cir.2000) (objectors challenging adequacy of representation should have done so at time of certification); *In re Cendant Corp. Litigation*, 264 F.3d 201 (3rd Cir.2001) (objectors' challenge to adequacy of representation, raised at settlement approval stage, was untimely and hence waived). Given the factual and procedural history of this case spanning over a decade, Appellants' tardiness is unjustified and their point is untimely.

 Even indulging Appellants on the merits for the sake of exhaustion, adequacy of representation and fairness of settlement are determinations within the sound discretion of the trial court, and we find no abuse of that discretion here. *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707 (Mo. App.2009) (adequacy of representation reviewed for abuse of discretion); *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260 (Mo.App.2011) (adequacy of settlement reviewed for abuse of discretion). Rule 52.08(a)(4) requires a trial court to find

dismissed for failure to comply with the briefing requirements of Rule 84.04. Most notably, Respondents observe that Appellants' points relied on collapse multiple issues into one point, conflating the issues and confusing their respective standards of review. Additionally, the argument section raises matters beyond the points relied on. "A brief impedes disposition on the merits when it is so deficient that it fails to give notice to this court and to other parties as to the issues presented on appeal." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). Here, despite the quality of Appellants' brief, we are able to ascertain the gist of their arguments. As a matter of policy, this court prefers to decide cases on their merits whenever possible. *Comp & Soft, Inc. v. AT & T Corp.*, 252 S.W.3d 189, 194 (Mo.App.2008). In furtherance of that policy and out of respect for the

parties to this odyssey, we therefore elect to review the merits *ex gratia*. In that spirit, as a complete recitation of Appellants' points and sub-points would be unnecessarily cumbersome, and confident that we understand the crux of each principal argument, we paraphrase and streamline them in our analysis below for the reader's ease.

6. Appellants' counsel here has represented certain Appellants in personal injury suits filed against Doe Run around the same time. This case has already yielded two earlier published decisions, the later of which specifically identified the Representatives and the Class as early as 2006. See *State ex rel. The Doe Run Resources Corporation v. Neill*, 128 S.W.3d 502 (Mo. banc 2004) (upholding venue), and *Doyle v. Fluor Corp.*, 199 S.W.3d 784 (Mo.App.2006) (upholding class certification).

that class representatives will fairly and adequately protect the interests of the class. *Vandyne v. Allied Mortg. Capital Corp.*, 242 S.W.3d 695, 698 (Mo. banc 2008). To this end, the court must consider whether the named representatives have any conflicts of interest that will adversely affect the interests of the class. *Id.* Appellants insist that separate representatives should have been appointed to represent the interests of (1) each certified sub-class (owners of remediated property versus owners of unremediated property) and (2) current versus previous owners.

In 2005, when the trial court first certified the Class, with its sub-classes, it specifically found that the Representatives "demonstrated that they ... are capable of fairly and adequately representing the interests of property owners in Herculaneum." This court affirmed the trial court's order in its entirety. *Doyle v. Fluor Corp.*, 199 S.W.3d 784 (Mo.App. 2006). In 2010, when the trial court clarified that class membership includes current and previous owners, it acknowledged the possibility of tension between the two but specifically found that "such conflict does not reach critical mass and is manageable." In its final judgment approving the settlement and allocation plan, the trial court specifically considered Appellants' post-hearing argument and expressly found that the Representatives adequately represented the class. Noting that the adequacy of representation can be evaluated based on the terms of the settlement *Ring v. Metro. St. Louis Sewer Dist.*, 41 S.W.3d 487, 492 (Mo.App.2000), the trial court enumerated the following factors supporting its determination. The action was complex and vigorously litigated over a long period; both parties incurred considerable expenses. The settlement was a product of an arm's-length negotiation, free of fraud or collusion. Further litigation would consume even more time and resources, cause the Class additional hardship, uncertainty and delay in compensation, and possibly jeopardize the settlement altogether. Indeed, the court observed that, if the case were to proceed to trial, there was no guaranty that the Plaintiffs would succeed or recover as much as the settlement offered them. With respect to allocation, the court rejected Appellants' complaint that the plan failed to account for differences within the Class, particularly distance from the smelter and previous remediation, because, in short, the entire area was contaminated. Viewed through a "nuisance lens," the court stated, "reasonable minds can differ on how to quantify loss." The plan provides nuisance compensation to all current and previous owners by function of duration of ownership and additional compensation for all current owners' property damage based on remediable surface area. Respondents explain that, by the time of settlement in 2012, nearly all properties in the Class had undergone remediation, so the sub-class distinction created in 2005 had become largely irrelevant. The court balanced the merits of Plaintiffs' case and the risks of trial against the terms of the settlement, it considered the nature and extent of their damages and recovery under the allocation plan, and ultimately it found the arrangement fair, reasonable, and adequate. We find no abuse of discretion in any of the foregoing determinations by the trial court, and Appellants fail to convince us to the contrary.

Though Appellants insist that each sub-class (remediated vs. unremediated) required separate representation, they admit that virtually all properties in Herculaneum now have been remediated, thus ren-

dering the distinction moot.[7] Twenty-four Appellants resided in the buy-out zone and sold their previously-remediated property to Defendants. Those Appellants clearly fell into the remediated class and thus were adequately represented by the Representatives. Among the four Appellants who stayed, none claim to possess one of the rare unremediated properties left in Herculaneum. Thus, Appellants fail to demonstrate—or even allege—that any one of them was *actually* aggrieved by the absence of sub-class representatives. Though Appellants also insist that the structure of the allocation plan necessitates separate representation by past and present owners, the Representatives already comprise both groups, so there is simply no factual basis for Appellants' claim of inadequate representation on these grounds. In sum, the Representatives quite adequately represented the entire Class, including Appellants, and reached a settlement that was fair and reasonable weighing all relevant factors. The trial court committed no abuse of discretion. Point denied.

## II. *Notice*

██ For their second point, Appellants contend that notice of the action and opt-out instructions, published and direct-mailed to the Class in 2010, was inadequate as to the scope of the Class (specifically language as to whether former owners were included), the specific rights and interests of its members, and the deadline for opting out. Appellants' complaint regarding the scope of the Class was not raised in the trial court and hence is not preserved for our review. Rather, Appellants' specific objections before the trial court were that (1) the notice didn't men-

tion the release of punitive damages under the settlement, (2) the opt-out deadline was not recorded in the court file so that members of the public (or lawyers) following the case would know of the deadline, and (3) the notice by publication didn't specify the deadline date. Desiring to turn back the clock on a decade of litigation, Appellants sought relief from these alleged defects in the form of withdrawal of the prior notice and submission of a new notice, specifying publication and deadline dates, to be properly spread upon the record and re-issued to the Class. The trial court refused to grant this drastic measure, reasoning that (1) the absence of a specific reference to punitive damages did not render notice inadequate, and Plaintiffs could still recover punitive damages in personal injury actions; (2) the court approved the notice form with a blank date in anticipation of appeal but the date was specified in the written notice; and (3) the published notice advised readers how to request notice by direct-mail, which did specify the date (May 4, 2010). We find no abuse of discretion in these determinations.

██ First, Appellants' primary complaint—*i.e.*, that the 2010 notice apprising members of the *existence* of the action lacked specifics concerning the terms of the resulting settlement reached two years later—is logically absurd. Notice of a lawsuit cannot be deemed inadequate for failing to divine the precise terms of a future settlement, such as the release of claims for punitive damages. Moreover, the notice sets no expectation for an award of punitive damages in the first place. It states simply that "the lawsuit seeks to compensate members of the Class for damages they may have incurred because

---

**7.** As a practical matter, any unremediated sub-class representative appointed in 2005 likely would have received remediation at some time thereafter and thus would have ceased to represent the shrinking sub-class.

of the alleged contamination," including "the costs of clean-up or remediation, ... money compensation for claimed loss in value of property, annoyance and discomfort, and loss of use and enjoyment." Appellants' suggestion that they were duped out of a punitive award is unconvincing. Appellants' true complaint, rather, is that the 2012 notice of *settlement* should have provided a second opportunity to opt-out once the terms were known. That issue is beyond Appellants' points relied on and is not before this court for review. Even if it were, to extinguish all doubt, we find no abuse of discretion in the trial court's determination that a second opt-out period is not required under Rule 52.08 and would have unnecessarily disrupted settlement proceedings and prolonged the case to the detriment of all parties.

Second, the trial court exercised appropriate discretion in approving the form notice with a blank date at that time in anticipation of appeal, as indeed further litigation did ensue. Appellants cite no authority for the proposition that proper notice to the Class by mail and publication in compliance with Rule 52.08 can be nullified by a reservation in the court file. We cannot fathom how such facts could justify reversal here.

Finally, we agree that notice of the opt-out date was adequate. Rule 52.08 simply requires that the class be provided "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 52.80(c)(2). The notice must advise that: members can opt out by a specified date, the judgment will include all members who don't opt-out, and members may enter an appearance by counsel. *Id.* The 2010 notice satisfied these requirements. Although the published notice lacked a specific date, it did instruct readers how to obtain direct-mail notice, and both notices contained contact information for further inquiry. We find no abuse of discretion in the trial court's refusal to withdraw and re-issue notice of the action at this point in the proceedings or in its approval of the final settlement over Appellants' objections. Point denied.

### III. *Discovery*

For their third and final point, Appellants maintain that the trial court abused its discretion by denying their motion for continuance and discovery, which Appellants sought purportedly to evaluate the fairness of the settlement. We review a court's decision on a request for continuance and discovery under an abuse of discretion standard. *City of Wentzville v. Dodson*, 133 S.W.3d 543, 548 (Mo.App. 2004). We allow the trial court broad discretion in the control and management of discovery. *Id.* A trial court abuses that discretion when its ruling was "clearly against the logic of the circumstances then before it and so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *Id.*

Notice of the settlement was mailed to the Class February 10, 2012. On February 16, Appellants' counsel sent a letter to Class counsel requesting essentially all discovery in the case, for the stated purpose of advising Appellants "on the settlement." Class counsel declined to provide the entirety of discovery in the record, much of which, they assert, was known to Appellants' counsel by virtue of their representation of Doe Run plaintiffs in personal injury cases and through public records of the EPA. Instead, Class counsel provided certain reports by environmental experts relevant to the chosen structure of the allocation plan. Appellants deemed those reports insufficient and demanded additional detail "that explains the rationale for

the distribution plan." Primarily, Appellants complain that the plan does not account for individual plaintiffs' distance from the smelter.

The trial court heard arguments at the time of the approval hearing. Respondents argued that Appellants' request was overbroad and unnecessary to form their stated objection, and, moreover, as a general principle, objectors have no absolute right to discovery (citing precedent from other jurisdictions [8]). Additionally, and of paramount concern, Respondents emphasized that the Class would be severely prejudiced by any delay, as Defendants' financial obligation under the settlement was contingent upon final approval within 30 days. The trial court denied Appellants' motion for continuance.

On appeal, Appellants seem to challenge the validity of a protective order entered by the trial court placing certain confidential information and discovery documents under seal. That issue is not preserved, and we will not review it. With respect to the precise issue of whether the trial court acted within its broad discretion in denying Appellants' motion for continuance, we see no abuse of discretion in that decision. Appellants' counsel has conducted significant discovery in other suits against Doe Run, voluminous environmental information is publicly available, and Respondents provided additional discovery specifically relevant to Appellant's objection concerning allocation. In short, all properties were affected, and distance from the smelter was simply not the parties' chosen basis for allocation under the settlement. Appellants' objection to this decision did not suffer for lack of further environmental discovery. Weighing the arguable benefit of additional time for Appellants' discovery against the potentially substantial prejudice to the Class as a result of further delays, it becomes apparent that the trial court properly exercised its discretion by denying the motion. Point denied.

## Conclusion

The trial court's judgment approving the final settlement is affirmed.

SHERRI B. SULLIVAN and GLENN A. NORTON, JJ., concur.

**8.** See for example *In re General Tire and Rubber Co. Securities Litigation,* 726 F.2d 1075 (6th Cir.1984). While objectors are entitled to "meaningful participation" and "leave to be heard," they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise. *Id.* at 1084, fn. 6.