

# Missouri Court of Appeals

## Southern District

### Division One

POPLAR BLUFF INTERNET, INC.,   )
                                                      )

          Plaintiff/Appellant,   )

                                                      )

      vs.   )      No. SD32823

                                                       )      Filed: April 21, 2014

CITY OF POPLAR BLUFF,   )

                                                       )

         Defendant/Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael J. Ligons, Special Judge

### AFFIRMED

This is an appeal by Poplar Bluff Internet, Inc. ("PBI"), from the trial court's entry of "Partial Summary Judgment" and "Judgment" against PBI in favor of City of Poplar Bluff ("City").[1] We affirm the "Judgment" of the trial court.[2]

---

[1] In its original petition and two amended petitions, PBI also made claims against "Municipal Utilities & City Cable" alleging it was a separate entity from City. In its answers to each petition, City stated Municipal Utilities & City Cable was only a department of City, not a separate legal entity, could not be sued, and had sovereign immunity as a component of City. Later, in its motion for summary judgment, City recited in its statement of facts that: "[PBI] has incorrectly and without foundation asserted that 'Defendant Municipal Utilities & City Cable is a separate entity utility company owned by Poplar Bluff.'" PBI admitted this fact in its response to City's statement of facts. "We treat as true any facts alleged in a properly pleaded summary judgment motion not disputed by non-movant." *Wehmeyer v. FAG Bearings Corp.*, 190 S.W.3d 643, 649 (Mo.App. S.D. 2006); *see also* Missouri Court Rule 74.04(c)(2) (2013). For that reason, City is the only respondent in this appeal.

[2] In its November 25, 2011 "Partial Summary Judgment," the trial court granted "[City]'s Motion for Summary Judgment on [PBI]'s Claims," but denied the request for summary judgment on City's counterclaims. In its June 12, 2013 "Judgment" the trial court granted judgment to "Defendant City of Poplar Bluff" in the amount of $206,787.92. The June 12, 2013 Judgment was a final and appealable judgment. *See American Western Bonding Co., Inc. v. United Surety Agents, Inc.*, 134 S.W.3d 700, 705 (Mo.App. S.D. 2004) (noting the general rule is a judgment is final and appealable if it disposes of "all issues and all parties in the case leaving nothing for future determination.") (internal quotation and citation omitted).

## Facts and Procedural History

We begin by noting that PBI in its brief stated, "Indeed, this is possibly the strangest procedural case in which [PBI]'s counsel has been involved."[3]

In 2001, City established its "Open Access Policy" under which it exercised its discretion to sell access to its cable system to private companies independently offering internet services. PBI is an internet service provider that began purchasing access to City's system in 2002. City, pursuant to an ordinance, discontinued Open Access and PBI's use of its system on May 9, 2011.

On March 18, 2011, PBI filed a "Petition"[4] alleging that City had violated section 392.410,[5] committed tortious interference with a business expectancy, and violated Missouri anti-trust laws. On March 29, 2011, prior to any responsive pleading by City, PBI filed its "First Amended Petition" adding a count for violation of the Missouri Merchandising Practices Act. Also on March 29, 2011, PBI filed a motion for temporary restraining order seeking to prohibit City from terminating its Open Access Policy.

On April 6, 2011, City filed its answer and counterclaims seeking payment of the amount owed by PBI to City for use of the Open Access.

On April 28, 2011, the trial court denied PBI's request for preliminary injunctive relief.

On May 13, 2011, PBI filed its "Second Amended Petition," in part because City had by then terminated PBI's use of Open Access.

---

[3] We note that just reviewing the briefs in this case was "strange." Specifically, the cited page references to the legal file as stated in the statement of facts in City's brief do not support the assertions made. Oftentimes, the correct legal file page was several pages off, and at other times, more than 20 pages off. This Court is unsure how City came to the legal file citations ultimately cited.

[4] PBI stated in its Petition it was doing business as "SEMO.net," and refers to itself interchangeably as PBI and/or SEMO.net throughout the record.

[5] References to section 392.410 are to RSMo Cum.Supp. 2008. All rule references are to Missouri Court Rules (2013).

This case was eventually heard and fully resolved on two different and separate motions for summary judgment.[6]

**"[City]'s [First] Motion for Summary Judgment"**

In the first motion for summary judgment and responses, the parties admitted the following facts in their respective motions.

City is a third-class municipal corporation under Missouri law. In 2000, after receiving voter and circuit court approval of general obligation bonds, City financed and constructed a broadband cable television system through which it subsequently offered cable television and ancillary internet services in and around City. City held a "Video Service Authorization" issued by the Missouri Public Service Commission ("PSC"), authorizing it to provide video service within Butler County, pursuant to section 67.2679.[7] City did not have any other form of authority from the PSC, and specifically none for telecommunications service. City provided cable television services called "City Cable," and internet services called "MyCityCable.com," over its broadband cable system subject to FCC regulation.

In 2001, City established its Open Access Policy, pursuant to which it exercised its discretion to sell wholesale access to some of the capacity of its cable system to companies independently offering retail internet services. PBI began purchasing access to City's system in 2002, as did several other such companies.

---

[6] On July 6, 2011, City filed its first motion for summary judgment on PBI's Second Amended Petition and on City's counterclaims. On November 25, 2011, the trial court granted "Partial Summary Judgment" in favor of City on PBI's Second Amended Petition, but denied City's request for summary judgment on City's counterclaims. On January 30, 2012, City filed a "Motion for Judgment on the Pleadings as to [PBI]'s Affirmative Defenses to Counterclaims" with respect to PBI's affirmative defenses to City's counterclaims, alleging that the six affirmative defenses raised by PBI were deficient on their face in that they did not contain the necessary factual allegations mandated by Rule 55.08. On March 29, 2012, the trial court granted City's motion for judgment on the pleadings as to three of the six affirmative defenses raised by PBI. On October 12, 2012, City filed a second motion for summary judgment on its counterclaims and PBI's three remaining affirmative defenses titled, "Defendants' Motion for Summary Judgment on Plaintiffs' Remaining Affirmative Defenses."

[7] References to section 67.2679 are to RSMo Cum.Supp. 2007.

3

PBI did business as an internet service provider; PBI did not have any form of telecommunications service authority from the PSC. Landline and wireless telecommunications companies and satellite providers were also involved in the internet services market in and around Poplar Bluff, including companies like AT&T and Big River Telephone. PBI also used other means of providing service to its customers like dial-up/telephone, DSL, and wireless, both before and after it began using City's cable system.

There was no written agreement between City and PBI regarding a franchise or name license. There has never been a vote of the people pursuant to section 78.630, RSMo 2000 to grant PBI a franchise. PBI admitted its use of City's name on its webpage did not create a license or franchise with City. City was not involved in PBI's marketing of services.

In August 2010, City enacted Ordinance No. 7208, which established a revised rate structure under the Open Access Policy that took effect in September 2010. Pursuant to that Ordinance, City provided notice of the new rate schedule to PBI, announcing in the notice that the new rate schedule would take effect as of September 15, 2010.

After receiving notice of the new rates and even after the new rates took effect, PBI continued to request and receive Open Access services from City subject to the new rates. However, PBI failed to pay the full amount billed in the monthly invoices for the fees required by City for access to its system; PBI paid less than the full amounts billed under protest. Other internet service providers paid these fees and over time, transitioned to other solutions and stopped using City's system.

On April 4, 2011, City enacted Ordinance No. 7247, which accelerated the termination of City's Open Access Policy. Pursuant to that ordinance, City discontinued the Open Access Policy, and therefore PBI's use of City's system effective May 9, 2011.

4

PBI could and did negotiate access to systems of other video and telecommunications companies.[8]

In its response to City's motion for summary judgment, PBI "Contested"[9] some of City's facts. City stated as a fact that it voluntarily provided internet access to its system to service providers such as PBI, and the relationship between City and PBI was based solely on the Open Access Policy. Furthermore, City stated as a fact that it never made a commitment to continue offering Open Access to its system for any specific period of time, and the tax exempt status of the bonds that financed the construction of the system precluded any such commitment.

PBI responded that "City and City Cable knew of the symbiotic relationship between the parties and remained committed to Open Access until [PBI] entered into direct competition with City Cable." However, PBI acknowledged there was "no evidence of this [] currently before the court due to lack of discovery[.]"

City argued it never granted a license to PBI to use a trade name, trademark, service mark, or related characteristic. City further argued there was "no community of interest -- instead the City and [PBI] are competitors."

While PBI contended its use of "City Cable's name, and the City's continued assent to that use, demonstrated that the City has granted [PBI] a license to use the name City Cable in the marketing, sale, and provision of [PBI]'s Services." PBI further argued City and City Cable profited from the relationship with PBI, which created expectations of services continuing to be

---

[8] City noted "[o]ther internet service providers that once used the City's system, like Big River, have found other solutions upon notice of the impending termination of the Open Access Policy." PBI "Contested" this statement of fact and argued the "cited sources do not support this characterization of the facts."

[9] We note Rule 74.04(c)(2) provides a party's "response shall set forth each statement of fact in its original paragraph number and immediately thereunder **admit or deny** each of movant's factual statements." (Emphasis added). PBI failed to fully comply with either of these requirements; i.e., PBI failed to set forth each statement of fact and failed to admit or **deny**, but instead "Contested" movant's factual statements.

made available through Open Access. PBI argued City was committed to Open Access until PBI entered into direct competition with City Cable.

City stated as a fact that Ordinance No. 7208 provided for the termination of the Open Access Policy within one year in lieu of City continuing to expend public monies to expand the capacity of the system to meet the ever-growing needs of the private internet service providers.

PBI "Contested" this fact alleging the "ordinance in question states that Open Access will not be discontinued 'not less than one year after the implementation of the revised rate schedule,' meaning that [PBI] should have had one year or more before Open Access was terminated."

City stated as a fact that notwithstanding City's termination of the Open Access Policy, City's end-user customers were still able to use City internet services at any time to obtain internet service from any other providers, including PBI. PBI "Contested" this fact alleging the "cited sources do not support this characterization of the facts."

City contended PBI owed City $175,826.89 for services from September 15, 2010 to May 9, 2011, plus interest at the statutory rate of nine percent per annum, which continued to accrue at the rate of $43.35 per day. City alleged PBI refused to pay the balance due after numerous demands upon it. PBI "Contested" this statement of fact, and alleged City "has not completed the dispute process as required by its own policy[.]"

In support of its motion for summary judgment with respect to PBI's claims, City asserted that section 392.410 was inapplicable because City did not provide regulated intrastate telecommunications services or rely upon any of the exceptions set forth in that statute. City argued that it did not violate the statute, City was not acting in an anti-competitive or discriminatory manner, City had discretion to terminate its Open Access Policy, City had not

6

violated anti-trust laws or the Missouri Merchandising Practices Act and City was protected from any liability by sovereign immunity.

On November 25, 2011, the trial court granted Partial Summary Judgment ("first judgment") in favor of City on PBI's Second Amended Petition, but denied City's motion as to City's counterclaims. The trial court did not elaborate on its ruling.

### "[City]'s [Second] Motion for Summary Judgment on [PBI]'s Remaining Affirmative Defenses"

Thereafter, on January 30, 2012, City filed a motion for judgment on the pleadings with respect to PBI's affirmative defenses to City's counterclaims, alleging that the six affirmative defenses raised by PBI were deficient on their face in that they did not contain the necessary factual allegations mandated by Rule 55.08. On February 21, 2012, PBI filed a "First Amnended [sic] Answer to [City]'s Counterclaims." On March 5, 2012, City refiled its motion for judgment on the pleadings on the same grounds as its prior motion.

On March 29, 2012, the trial court granted City's motion for judgment on the pleadings as to three of the six affirmative defenses raised by PBI,[10] leaving only PBI's affirmative defenses pertaining to an alleged failure on the part of City to utilize unidentified administrative "policies and regulations" related to PBI's billing disputes.[11]

In May 2012, during a telephone call with the trial court, an agreement was reached between PBI and City to postpone an impending trial. The agreement was confirmed by letter dated June 1, 2012, which was filed with the trial court. In accordance with the agreement, PBI presented to City's Municipal Utilities Advisory Board its protest of the rates charged in all the

---

[10] PBI does not challenge the trial court's ruling on City's motion for judgment on the pleadings in its points relied on in this appeal.

[11] The trial court sustained City's motion as to PBI's affirmative defenses four, five, and six and denied City's motion as to PBI's affirmative defenses one, two, and three.

7

billing statements sent by City to PBI that PBI had not fully paid. City still disputed the applicability of such review procedures, but conducted them as agreed.

After completing the agreed-upon administrative review process on October 12, 2012, City filed a second motion for summary judgment on its counterclaims and PBI's three remaining affirmative defenses. Brian Becker, the president of PBI, who was not a licensed attorney, attempted to file a response on behalf of PBI. However, it was presented to the trial court by PBI's subsequent attorney, *see infra*, that Mr. Becker "was not in a position to represent [PBI] in [c]ourt."

On November 15, 2012, a hearing was held with PBI appearing without counsel. On November 20, 2012, the trial court entered judgment in favor of City on its claim for summary judgment as to its counterclaims and the remaining three affirmative defenses, and entered judgment against PBI in the amount of $175,865.11, plus interest. The trial court found that because PBI's response to City's motion for summary judgment had not been filed by an attorney, and because PBI had not procured an attorney despite receiving a recess to do so, its response to City's motion for summary judgment and its motion to reconsider the prior summary judgment were nullities. PBI then retained new counsel, Derrick S. Kirby ("Kirby"), who then filed a "Motion for Leave to File Pleadings Out of Time to Set Aside Judgment and/or for a New Trial" on December 19, 2012.

On January 16, 2013, PBI filed an "Amended Motion for Leave to File Pleadings Out of Time to Set Aside Judgment and/or for a New Trial." On January 23, 2013, the trial court determined that the failure on the part of PBI to file a response to City's second motion for summary judgment was "excusable neglect" owing at least in part to the lack of disclosure by PBI's prior counsel of his suspension from the practice of law while counsel continued to serve

8

as an attorney for PBI. PBI was then granted additional time to file a response to City's second motion for summary judgment, but was sanctioned and ordered to pay attorney fees incurred by City as a result of PBI's "excusable neglect."

PBI filed its response to City's second motion for summary judgment on February 4, 2013; City filed its reply on February 19, 2013.[12] In its reply, City cited a letter from City's attorney dated June 1, 2012, evidencing an agreement the parties made in a telephone call with the trial court regarding an agreed-upon administrative hearing before the City's Municipal Utilities Advisory Board and City Council. In the second motion for summary judgment and responses, the parties admitted the following facts through their respective motions.

Both parties again admitted that PBI requested and received services during the period from September 15, 2010 through May 9, 2011, and that it did so with knowledge of the rates charged by City. PBI disputed "some of the usage calculations and contended the rates were unlawful under Section 392.410[.]" PBI argued the "rates charged for the services were illegally computed and unreasonable."

In July 2012, PBI voluntarily and by agreement with the City, presented its dispute regarding the rates charged and billing statements sent by City pursuant to City's Municipal Utilities Billing and Collection Policy.[13] After conducting a hearing, the Municipal Utilities Advisory Board notified PBI on July 19, 2012, that it denied PBI's request for an adjustment to the billing statements in dispute. PBI subsequently filed its request for a *de novo* appeal to the City Council.

---

[12] PBI filed a sur-reply, which was not included in the Legal File. City moved to strike it because City had not filed any additional statement of material fact in its reply. The trial court ultimately indicated it had the authority to grant the motion to strike, but instead considered the sur-reply and still ruled in favor of City.

[13] PBI admitted they voluntarily presented their dispute as to the bills they filed a protest to in December, but denied as to the remaining disputed bills not included in their December protest.

9

On August 10, 2012, after a hearing, City Council advised PBI that it denied PBI's protest and upheld the decision of City's Municipal Utilities Advisory Board. Pursuant to City's Municipal Utilities Billing and Collection Policy, "[a] decision by the City Council shall be considered a final administrative action by the City." At that time, City determined that $175,856.11 was presently due and owing from PBI. PBI has not paid the balance owed to City.[14]

PBI "denied"[15] City's allegation that "[PBI] has not sought judicial review of the City Council's decision denying its protest." PBI argued City "failed to follow the applicable provisions of the Missouri Administrative Procedure Act and, therefore, no judicial review is necessary."

PBI also filed its "Statement of Additional Undisputed Material Facts" in response to City's second motion for summary judgment. PBI stated as a fact that on November 15, 1999, City approved an ordinance that permitted City voters on February 2, 2000, to vote on a bond that was to be used for "constructing and equipping a broadband telecommunications system." City denied this fact, but admitted on November 15, 1999, that City adopted Ordinance Number 6224 titled, "AN ORDINANCE CALLING FOR A SPECIAL ELECTION IN THE CITY OF POPLAR BLUFF, MISSOURI, ON FEBRUARY 8, 2000 TO DETERMINE WHETHER THE CITY SHOULD ISSUE ITS GENERAL OBLIGATION BONDS . . . FOR THE PURPOSE OF ESTABLISHING AND CONSTRUCTING AND EQUIPPING A BROADBAND TELECOMMUNICAITON (SIC) SYSTEM."

---

[14] PBI admitted it had not paid the balance to City because PBI contends "no such amount is due and owing."

[15] PBI again failed to follow Rule 74.04(c)(2) in that it failed to set forth each statement of fact; however, this time PBI "[d]enied" rather than "[c]ontested" City's facts.

10

Both parties admitted that on February 7, 2000, City put an advertisement in the *Daily American Republic* explaining the bond issue to City voters, and in the advertisement City listed certain "'facts about this proposed system,'" which included the following:

'During the beginning of 1999, the City of Poplar Bluff commissioned the preparation and submission of a feasibility study which clearly demonstrated the deployment of a broadband telecommunications network by the City is a viable, financially sound endeavor and is in the best interest of our community[.]'

'The system will be capable of providing a telecommunications network for (a) cable television service, (b) distance learning, (c) any energy management and (d) high speed data transfer.'

The bond issue passed on February 8, 2000.

City denied PBI's alleged fact that City's "'telecommunications network'" was constructed and began operating in September 2001. City alleged its "*cable television system began operating in September 2001.*" (Emphasis added).

In December 2002, the PSC conducted a survey and City answered "Yes" to a survey question of whether City "'own[s] or operate[s] a telecommunications network offering services to the public.'" (Brackets in original). City then identified the type of the telecommunications network as "INTERNET."

City denied that on September 28, 2004, the PSC sent City a survey for its "'telecommunications networks,'" which City completed and returned. Instead, City claimed the PSC issued a report that analyzed "the economic impact of municipally owned and operated cable television and telecommunication systems[.]" City further denied the information requested was regarding its "'[I]nternet system'" and responded to the PSC that "its network is also used for cable television and for open access to other ISPs."

City further denied that on October 4, 2007, the PSC sent City a survey regarding City's "'telecommunications networks.'" Rather, City contended the request was for information

11

regarding its "'internet access,'" and City's responses demonstrated it was also providing cable television services.

Both parties admitted that PBI disputed City's bills beginning November 2010 through May 2011. With respect to the disputed billing statements, City denied it failed to respond in writing to any of PBI's protests except for the protest to the November 2010 bill. City further denied that it did not send PBI findings of fact or conclusions of law following the hearing in front of the City Council on August 6, 2012. Instead, City asserted City Council did send its decision with factual findings and conclusions of law.

Finally, City denied that Exhibit 101 ("Appendix C" of City's "Municipal Utilities Billing and Collection Policy") attached to City's motion for summary judgment applied to all users of City's broadband network.

On March 22, 2013, PBI sought leave to add an additional count to its Second Amended Petition and additional affirmative defenses, both alleging that City had "violated" the Missouri Administrative Procedure Act in connection with the hearings and decision on its billing disputes. PBI also attempted to add an affirmative defense alleging (as it had in its Second Amended Petition) that City's change in the Open Access rates, as applied in the unpaid bills, violated section 392.410. On April 10, 2013, PBI filed for reconsideration of both the Partial Summary Judgment entered on November 25, 2011, and the "Order and Judgment" entered on March 29, 2012, relating to PBI's affirmative defenses four, five, and six, referencing various public documents that had been available long before suit was filed. The trial court denied all of these motions on May 17, 2013.

On June 13, 2013, the trial court again awarded Judgment ("second judgment") in favor of City and against PBI on PBI's remaining three affirmative defenses and City's counterclaims,

12

awarding judgment in favor of City in the amount of $206,787.92, including interest. This appeal followed.

PBI raises four claims of trial court error on appeal: (1) sustaining the October 12, 2012 motion for summary judgment as to City's counterclaim because the record was enlarged and City submitted additional argument and evidence, which the trial court relied upon, after PBI had responded to City's motion; (2) finding PBI waived its defenses and claims that City violated the Missouri Administrative Procedure Act because PBI's claims related back to the date the action was filed; (3) failing to grant PBI leave to amend its answer to City's counterclaim and add a separate count; and (4) granting City's motion for summary judgment as to PBI's Second Amended Petition because a question of fact existed as to whether City "was providing telecommunications services or telecommunication facilities pursuant to §[]392.410.7."

The primary issues pertinent to resolution of this appeal are:

1. Did the trial court abuse its discretion in denying PBI's motion for leave to amend its answer to assert additional affirmative defenses and add a separate count to PBI's Second Amended Petition?

2. Did the trial court err in finding PBI waived its "defenses and claims" that City violated the Missouri Administrative Procedure Act in processing PBI's bill protests because these "defenses and claims" relate back to the date of the original pleadings?

3. Did the trial court allow City to raise new factual issues, grounds, or arguments within the summary judgment proceeding without offering PBI the opportunity to respond thereby violating Rule 74.04 and prejudicing PBI such that reversal is required?

4. Did the trial court err in granting summary judgment on PBI's Second Amended Petition because a factual dispute existed?

For ease of analysis, PBI's points relied on will be addressed out of order. We begin our analysis with PBI's Point III in which PBI claims the trial court "abused its discretion by not permitting [PBI] to file an Amended Answer to [City's] Counterclaim and add a separate count

13

to [PBI's] Second Amended Petition." Additional facts may be recited in our analysis where appropriate.

### Point III:  No Error in Denying PBI's Motion for Leave to Assert Additional Affirmative Defenses and Add a Separate Count to Second Amended Petition

**Standard of Review**

PBI's argument in its Point III does not involve the summary judgment motion, and therefore requires application of a different standard of review.  PBI's argument that the trial court erred in denying its motion for leave to amend its answer and add an additional count to its Second Amended Petition is reviewed for abuse of discretion.  ***Dibrill v. Normandy Associates, Inc.***, 383 S.W.3d 77, 83-84 (Mo.App. E.D. 2012).  "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration."  ***Nelson v. Waxman***, 9 S.W.3d 601, 604 (Mo. banc 2000) (internal quotations and citation omitted).

**Analysis**

Rule 55.33(a) governs leave to amend a petition and mandates that a "pleading may be amended once as a matter of course at any time before a responsive pleading is served[,]" otherwise, "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  *See* ***Fleddermann v. Camden County, Missouri Bd. of Adjustment***, 294 S.W.3d 121, 125 (Mo.App. S.D. 2009).

PBI's March 22, 2013 motion sought leave to add a Count VI alleging City violated the Missouri Administrative Procedure Act, a "Seventh Affirmative Defense" that City failed to follow the Missouri Administrative Procedure Act, and an "Eighth Affirmative Defense" alleging City's counterclaim was "based upon a rate change that is in violation of §[]392.410

14

and, thus, any claim for the improper rate(s) is illegal and a violation of [PBI]'s right to due process." In support of its request for leave, PBI argued its additional count and affirmative defenses "[were] now ripe" following the March 19, 2013 letter from City confirming that City did "not intend to file any Findings of Fact and Conclusions of Law with respect to its purported decision" following the August 6, 2012 hearing on the disputed bills. PBI attached the letter, Exhibit A, which stated as follows:

> I am in receipt of your letter dated March 5, 2013. Notwithstanding the assertions made in your letter, I am confident that you are already aware that the City quite some time ago provided notice of its decision of all of your clients' disputed bills, including pertinent Findings of Fact and Conclusions of Law. The administrative hearing process has been completed, and the decision is final and is no longer subject to judicial review.

When considering its decision in evaluating a motion to amend a pleading, a trial court should consider a number of factors, including:

> 1) hardship to the moving party if leave to amend is not granted; 2) reasons for failure to include any new matter in previous pleadings; 3) timeliness of the application; 4) whether an amendment could cure any defects of the moving party's pleading; and 5) injustice to the party opposing the motion.

*Fleddermann*, 294 S.W.3d at 125.

Here, PBI's original petition was filed on March 18, 2011, and included an allegation that City had violated section 392.410. After the trial court granted partial summary judgment in favor of City on PBI's Second Amended Petition (but denied City's motion as to City's counterclaim), PBI voluntarily agreed with City to present its dispute regarding the rates and bills to City's Municipal Utilities Advisory Board.[16]

---

[16] PBI alleged this dispute was as to disputes filed in December, but denied as to the other disputed bills. However, this denial does not comport with the agreement reached by the parties, as evidenced in the letter to the trial court: "a hearing before the Municipal Utilities Advisory Board and, if necessary, the City Council, *to dispute the bills that are the subject of the City's counterclaim*." (Emphasis added).

15

PBI agreed that after conducting a hearing, the Municipal Utilities Advisory Board notified PBI on July 19, 2012, that it denied the protest.[17] PBI subsequently applied for a *de novo* appeal to the City Council and after holding a hearing, City Council advised PBI by letter dated August 10, 2012, that it had denied PBI's protest and upheld the decision of City's Municipal Utilities Advisory Board.

In applying the facts as set out in ***Fleddermann***, this Court fails to see how PBI suffered a legally, cognizable hardship by the trial court's failure to grant leave. There is no indication in the record that PBI attempted to contact City about its August 2012 denial until PBI's letter to City dated March 5, 2013. More importantly, PBI waited until March 22, 2013, to seek leave to amend its answer to City's counterclaim and add a count alleging City violated the Missouri Administrative Procedure Act. This is not a situation where PBI discovered new information while the proceedings were pending and PBI immediately sought to amend its pleadings. Rather, PBI waited almost eight months after receiving a denial letter from City to file its motion for leave. The timeliness of PBI's request "does not bode favorably to [PBI]'s position." ***Fleddermann***, 294 S.W.3d at 126.

Furthermore, PBI has given this Court no valid reason for its failure to include the "new matter" in a previous pleading. Following the denial from City Council on August 10, 2012, the following events took place:

---

[17] In support of this statement of fact, City cited the July 19, 2012 letter memorializing the denial and stated "[a]t the July 16, 2012 Municipal Utilities Advisory Board meeting the board members discussed your request that you were billed in error for your open access invoices dated 10/22/10 through 06/22/11."

| August 21, 2012: | Case set for jury trial. |
| September 27, 2012: | Case review held. |
| October 12, 2012: | City filed its motion for summary judgment on PBI's remaining affirmative defenses. PBI filed a motion for reconsideration of summary judgment on counterclaims filed. |
| November 15, 2012: | Motion hearing on City's motion for summary judgment; summary judgment granted. |
| November 20, 2012: | Judgment entered. |
| December 19 & 21, 2012: | Entry of Appearance by attorney Kirby for PBI; motion for leave to set aside, file pleadings out of time, and set aside judgment filed by PBI. |
| January 17, 2013: | Motion hearing. |
| January/February 2013: | Motions for summary judgment and responses filed. |
| March 7, 2013: | Order to vacate and set aside prior judgment. |

At no time prior to March 2013, did PBI take any action on the City Council's decision. Despite PBI's argument otherwise, it did not timely file its motion for leave to amend.

Additionally, the proposed amendment would not cure any defects in PBI's pleading. There is no trial court error when a court denies a motion to amend a pleading to assert a claim that possesses no merit. *Curnutt v. Scott Melvin Transport, Inc.*, 903 S.W.2d 184, 194 (Mo.App. W.D. 1995). PBI did not seek judicial review of the City's decision within thirty days as required by section 536.110.1,[18] and is thereafter precluded from seeking judicial review of the final decision. Therefore, PBI's claim and affirmative defenses sought to be asserted regarding City's alleged violation of the Missouri Administrative Procedure Act is without merit. *See Smith v. City of Kansas City*, 635 S.W.2d 78, 79 (Mo.App. W.D. 1982) (holding that

---

[18] References to section 536.110.1 are to RSMo Cum.Supp. 2003.

17

"though the order is void, or is alleged to be void, [a party] is bound to file his [or her] petition in 30 days from the date of the offending order.").

Finally, PBI has failed to demonstrate an abuse of discretion under *any* of the five factors utilized to prevent the addition of its "Eighth Affirmative Defense" alleging City's counterclaim was "based upon a rate change that is in violation of §[]392.410[.]" Furthermore, the issue raised in the "Eighth Affirmative Defense" was addressed in the trial court's granting of City's first motion for summary judgment.[19]

We find the trial court did not abuse its discretion in denying PBI's motion for leave to amend its answer to assert additional affirmative defenses and add a separate count to PBI's Second Amended Petition. PBI's Point III is denied.

### Point II: PBI's Defenses and Claims Regarding the Missouri Administrative Procedure Act Did Not Relate Back to the Date of the Original Pleading

#### Standard of Review

Whether a claim is barred by a limitation is normally a question of law for the trial court's decision. *See* **Thompson v. Brown & Williamson Tobacco Corp.**, 207 S.W.3d 76, 111 (Mo.App. W.D. 2006). Such questions of law are reviewed *de novo*, with no deference to the trial court's determination of law. **Straub v. Tull**, 128 S.W.3d 157, 159 (Mo.App. S.D. 2004).

#### Analysis

The trial court concluded in its second judgment that PBI was "foreclosed from seeking judicial review [of the City Council's administrative decision] and the City Council's decision [was] final" because PBI did not seek judicial review within thirty days. The trial court further

---

[19] In support of its summary judgment motion, City asserted that section 392.410 was inapplicable because City did not provide regulated intrastate telecommunications service or rely upon any of the exceptions set forth in that statute. Although the trial court granted City's motion for summary judgment, the trial court did not elaborate the basis upon which the motion was granted. **Central Missouri Elec. Co-op v. Balke**, 119 S.W.3d 627, 635 (Mo.App. W.D. 2003). *See also* Point IV below.

concluded that "[h]ad [PBI] sought judicial review within thirty days then it could have challenged the sufficiency of the City's findings of fact, but it cannot now attempt to collaterally attack them."

In Point II, PBI claims the trial court's finding that PBI "waived its defenses and claim" that City violated the Missouri Administrative Procedure Act by failing to seek judicial review within thirty days was error because its "defenses and claim relate back to the date the action was filed pursuant to Rule 55.33(c)[.]" Specifically, PBI argues its "defenses and claim arise from the same 'conduct, transaction, or occurrence' set forth in [PBI]'s Counterclaim[;] . . . [a]ccordingly, [PBI]'s defenses and claim 'relate back to the date of the original pleading' making the arguments timely filed."

As previously noted, both the Municipal Utilities and Advisory Board and City Council held administrative hearings in the summer of 2012, during which PBI was able to protest City's billing to PBI. PBI agreed to participate in the administrative hearings and received notice of the decisions denying PBI's protests following the hearings. Furthermore, PBI admitted that pursuant to City's Municipal Utilities Billing and Collection Policy, "[a] decision by the City Council shall be considered a final administrative action by the City."

Under section 536.110.1, a party must seek judicial review of a final administrative decision within thirty days: "Proceedings for review may be instituted by filing a petition in the circuit court of the county of proper venue within thirty days after the mailing or delivery of the notice of the agency's final decision."

Missouri law is clear that the failure to file a petition for review within thirty days is fatal to the party's pursuit of judicial review. *See Smith v. City of Kansas City*, 635 S.W.2d 78, 79 (Mo.App. W.D. 1982); *see also Session v. Director of Revenue*, 417 S.W.3d 898, 903 (Mo.App.

19

W.D. 2014) (holding the statute providing for a thirty-day period to petition for judicial review from a final decision of the Director of Revenue does not provide any exception to the thirty-day requirement for filing a petition for review; the thirty-day period begins to run on the date of mailing). Here, PBI did not file a petition within thirty days of the mailing of the City Council's decision denying its protests, as required by section 536.110.1. Instead, PBI attempted to assert its claims regarding the City Council's administrative decision almost seven months later by attempting to amend its petition. We find PBI did not timely file its petition for review pursuant to section 536.110.1, and therefore the trial court did not err in finding PBI waived its "defenses and claims" that City violated the Missouri Administrative Procedure Act.

While acknowledging section 536.110.1, PBI argues Rule 55.33(c) applies and alleges "this is a case of first impression involving the interplay between Rule 55.33(c) and §[]536.110.1 RSMo." Like the Eastern District in *Beckerman v. Director of Revenue, State of Mo.*, 34 S.W.3d 413, 414 (Mo.App. E.D. 2000), we need not determine whether Rule 55.33(c) applies to administrative proceedings because we find even if it did apply in this case, "it would afford no relief here." In summary, the relation-back doctrine "provides that when a claim asserted in an amended pleading 'arose out of the conduct, transaction, or occurrence' set forth in the original pleading, the amendment relates back to the original pleading date." *Id.* (quoting Rule 55.33(c)).

Rule 55.33(c) "does not authorize an amendment which states an entirely new claim." *Caldwell v. Lester E. Cox Medical Centers-South, Inc.*, 943 S.W.2d 5, 8 (Mo.App. S.D. 1997). PBI's "defenses and claims" regarding the Missouri Administrative Procedure Act all concerned administrative procedures and hearings that occurred in the summer of 2012, approximately seventeen months *after* PBI filed its original pleadings. PBI's original petition was filed March 18, 2011, and alleged City violated section 392.410 in its rate charges, committed tortious

20

interference with a business expectancy, and attempted to monopolize the offering of broadband internet service. None of the allegations in the original petition related to administrative hearings.[20] On the other hand, PBI's proposed amended pleadings concerned allegations relating to administrative hearings and decisions that occurred almost one-and-a-half years after PBI filed its original pleading. Consequently, the allegations in the proposed amended pleadings do not arise from "the conduct, transaction or occurrence" set forth in the original pleading, but rather seek to state an entirely new claim. Therefore, Rule 55.33(c) would afford PBI no relief.

We find the trial court did not err in finding PBI waived its "defenses and claims" that City violated the Missouri Administrative Procedure Act in processing PBI's bill protests, and further find these "claims and defenses" do not relate back to the date of the original pleadings. PBI's Point II is denied.

The remaining Points I and IV relate to the trial court's grant of summary judgment. Therefore, the following standard of review applies to these two points.

**Standard of Review for Summary Judgment**

Appellate review of summary judgment is *de novo*. ***ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993). "This [C]ourt does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law." ***Johnson v. Sandler, Balkin, Hellman & Weinstein, P.C.***, 958 S.W.2d 42, 47 (Mo.App. W.D. 1997).

---

[20] PBI filed its "First Amended Petition" on March 29, 2011, adding a count for violation of the Missouri Merchandising Practices Act. This claim did not relate to administrative hearings.

21

"The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380. A movant "is entitled to judgment only if he or she can establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Wallingsford v. City of Maplewood*, 287 S.W.3d 682, 686 (Mo. banc 2009). A "genuine issue" exists where the record shows two plausible but contradictory accounts of the essential facts. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

The record is viewed in the light most favorable to the party against whom judgment was entered. *Id.* at 376. "The moving party bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Wallingsford*, 287 S.W.3d at 685 (citing *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376-81).

### Point I: No Violation of Rule 74.04 Resulting in Prejudice to PBI

In its first point relied on, PBI alleges the trial court erred in sustaining City's second motion for summary judgment as to PBI's counterclaims because the record was enlarged after PBI responded to City's second motion for summary judgment. PBI argues City submitted "additional arguments and evidence to which [PBI] had no opportunity to respond and the trial court relied upon these new arguments and evidence to render its decision." Specifically, PBI argues the trial court "violated procedural safeguards" set forth in *Wallingsford*, 287 S.W.3d at

22

686-87, by relying upon the June 1, 2012 letter from City's attorney that was filed with City's reply, and was not contained in City's second motion for summary judgment.[21]

*Wallingsford* states a violation of Rule 74.04 which results in prejudice takes place when a movant is allowed "to raise new factual issues, grounds or arguments within summary judgment proceedings, *without offering the other party the opportunity to respond.*" *Id.* at 686 (emphasis added). We find there is no prejudice to PBI because the trial court allowed PBI the opportunity to respond.

Here, PBI filed a Sur-Reply following City's reply. City in response filed a "Motion to Strike Sur-Reply" arguing City did not submit any additional statement of material facts in its Reply, so a Sur-Reply is not authorized under Rule 74.04. In its second judgment, the trial court noted City's Motion to Strike "could be granted" because City's reply did not include additional material facts. However, the trial court denied City's Motion to Strike "as moot" because "the [trial court ruled] in favor of the City *even after considering the Sur-reply.*" (Emphasis added).

The trial court clearly considered PBI's Sur-Reply, which was its opportunity to respond to the alleged "new factual issues, grounds or arguments" raised by the City. Therefore, we find the trial court did not allow City to raise new factual issues, grounds or arguments in the

---

[21] PBI also argues "the trial court's reliance [on the June 1, 2012 letter] was simply wrong," and lists various reasons in support of this statement. However, this argument is not contained in PBI's Point I. Rule 84.04(e), which governs arguments in appellate briefs, expressly limits arguments "to those errors included in the '"Points Relied On.'" *See Osthus v. Countrylane Woods II Homeowners Ass'n*, 389 S.W.3d 712, 716 (Mo.App. E.D. 2012) (holding "an appellant's brief also must contain an argument section that substantially follows each '"Point Relied On[.]'"). "Issues not encompassed by the point relied on and raised only in the argument portion of the brief are not preserved for review." *Cordes v. Williams*, 201 S.W.3d 122, 131 (Mo.App. W.D. 2006) (internal quotation and citation omitted).

As such, we only review PBI's claim of error raised in Point I: trial court error in sustaining the second motion for summary judgment because the record was enlarged after PBI responded to City's second motion for summary judgment.

23

summary judgment proceedings *without offering PBI the opportunity to respond.*[22]   For that reason, we find no violation of Rule 74.04 resulting in prejudice to PBI.  PBI's Point I is denied.

### *Point IV:  No Error in Granting "[City]'s [First] Motion for Summary Judgment" on PBI's Second Amended Petition*

PBI's final point alleges the trial court erred in granting the first summary judgment in favor of City on PBI's Second Amended Petition "because a question of fact exists in that [PBI] submitted admissible evidence that [City] was providing telecommunications services or telecommunications facilities pursuant to §[]392.410.7 RSMo."

Counts I and II of PBI's Second Amended Petition alleged City provided access to a "broadband network" pursuant to section 392.410, and City violated section 392.410 in terminating its Open Access Policy and in charging the rates set by the City Council "greater than 'a price which covers cost[.]'"  City's first motion for summary judgment asserted that section 392.410 was inapplicable because section 392.410 concerns "telecommunications" and

---

[22] We also note the June 1, 2012 letter did not raise new factual issues, grounds or arguments.  The trial court's docket sheet notes the letter was filed—"Letter to Judge Ligons"—on June 1, 2012.  The letter is addressed to Judge Ligons and confirms the telephone conversation with Judge Ligons, PBI's counsel, and City's counsel on May 31, 2012, regarding postponing the trial "in order to allow [PBI] the opportunity for a hearing before the Municipal Utilities Advisory Board and, if necessary, the City Council, to dispute the bills that are the subject of the City's counterclaim."  The letter further provided:

> It is my understanding that if [PBI] accepts this offer, the [trial court] will postpone the trial.  It is also my understanding that if the offer is rejected, [PBI] will not be allowed to assert its affirmative defenses at trial nor present or argue the claimed failure to provide this dispute process to the jury.

PBI admitted City's statement of fact that "[i]n July, 2012, [PBI] voluntarily and by agreement with the City, presented its protest regarding the rates charged and bills sent by the City to the City's Municipal Utilities Advisory Board pursuant to City's Municipal Utilities Billing and Collection Policy."  Clearly, PBI participated in the administrative proceedings and PBI acknowledged it did so "voluntarily and by agreement with the City."  The parties' agreement was open and obvious to the trial court and was not a "new factual issue."  There was no mistaking that PBI agreed in its response to City's statement of undisputed material facts (second motion for summary judgment) that the parties proceeded to conduct the administrative hearings pursuant to an agreement.

Furthermore, although the June 1, 2012 letter mentioned by City was not attached to City's reply, it was in the trial court's file and the trial court was aware of the contents of the letter because the trial court took part in the discussion mentioned in the letter.  To put it plainly, the trial court was already aware of the representations made in the letter because it was part of the telephone conversation between counsel for each party.

City is "an internet provider, not a telecommunications provider[.]" City also argued that even if section 392.410 applied, it did not violate the statute because City was not acting in an anti-competitive or discriminatory manner, City had discretion to terminate its Open Access Policy, City was authorized to charge more than "cost" for access to its cable television system, and the doctrine of sovereign immunity precluded PBI's claims against it.

Here, the trial court's grant of Partial Summary Judgment in favor of City on PBI's Second Amended Petition did not specify the basis for granting City's first motion for summary judgment.

> Where a trial court has granted summary judgment without specifying the basis upon which the motion was granted, this [C]ourt will affirm the grant of summary judgment under any appropriate theory. Further, a trial court's order is presumed to have based its decision on the grounds specified in respondents' motion if the trial court's order does not set forth its reasoning.

*Central Missouri Elec. Co-op v. Balke*, 119 S.W.3d 627, 635 (Mo.App. W.D. 2003) (internal citation omitted).

It may be presumed therefore, that the trial court granted summary judgment on any of the grounds contained in City's first motion for summary judgment. *Id.* However, on appeal, PBI only alleges summary judgment was inappropriate because a question of fact existed that would affect whether section 392.410 applied; i.e., City's first argument in its first summary judgment that section 392.410, the basis for Counts I and II, did not apply because it was not a "telecommunications" provider. Assuming PBI is correct on appeal, it must also establish that summary judgment was inappropriate on the other grounds offered by City: that if section 392.410 applied, it did not violate the statute and PBI's claims were precluded by sovereign immunity. *See id.* PBI did not do so, and therefore the trial court's grant of Partial Summary

25

Judgment "must be affirmed."  *Id.*, *see also* **Back Ventures, L.L.C. v. Safeway, Inc.**, 410 S.W.3d 245, 252 n.8 (Mo.App. W.D. 2013).

For that reason, we find the trial court did not err in granting City's first motion for summary judgment on PBI's Second Amended Petition because City was entitled to judgment in its favor as a matter of law.  PBI's Point IV is denied.

The judgments of the trial court are affirmed.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs